Dignowitty v. The State.

ANTHONY M. DIGNOWITTY v. THE STATE.

Where the owner of a bond, the obligee, at the request of the obligor, handed him the bond, that he might inspect it, and the obligor immediately put it into the fire where it was burned up ; it was held that there was not such possession in the obligor, as would require the State to prove that the fraudulent design existed at the moment of the receipt of the paper, in order to convict the obligor of larceny ; that the possession remained in the obligee until the actual conversion, and if that was done by the obligor without the consent of the owner, and with a view to benefit himself by depriving the obligee of the bond, it was sufficient to make out the charge.

Where the defendant was charged with larceny of a bond for title, the property of A, and the proof was that the bond was to A and B, who were husband and wife, and that B had died leaving one child surviving, and that the defendant took the bond from the possession of A, it was held that the Court properly refused to instruct the jury, that if the bond was not the sole property of A, or if other parties, or any other party had an interest therein, they could not convict.

An indictment for larceny, which described the thing stolen, as a certain instrument of writing containing evidence of an existing contract (for the conveyance of real estate, to-wit : a town lot in the city of San Antonio, in the county aforesaid) of the value of one hundred and fifty dollars, of the property of Matilda Francis ; held on motion in arrest of judgment, that the description was sufficiently certain, under the statute.

The rule is that where one person has the general and another a special property in the thing stolen, the property may be averred in the indictment to be in either.

It would seem that this Court will not reverse the judgment, on the ground that the Court below erred in the refusal to grant a new trial for cause which is supported by the affidavit of the defendant alone. *

Counter-affidavits are receivable on a motion for a new trial.

* We presume this is the extent of Judge Wheeler's meaning ; and not that the Court below is never justified in granting a new trial upon the affidavit of the party.—REPS.

Appeal from Bexar.   Tried below before the Hon. Thomas J. Devine.

Indictment for larceny of a certain instrument of writing, containing evidence of an existing contract (for the convey-ance of real estate, to-wit : a town lot in the city of San An-tonio in the county aforesaid) of the value of one hundred and fifty dollars, of the property of Matilda Francis, &c.

Plea, not guilty.   Evidence as follows :

Matilda Francis, a witness for the State, testified as follows : In August, 1853, my husband, William Francis, and myself bought two town lots, from Anthony M. Dignowitty, in the city of San Antonio, for one of which we paid the money, and he gave us a deed ; for the other we were to pay him in twelve months, at which time, upon the payment of the money, he was to make us a deed.   He gave us a contract in writing to that effect.   The consideration of this lot, for which the contract was given, was one hundred and thirty dollars.   My husband died in September, A.D. 1853.   We had but one child living at his death, an infant in my arms, now living.   In April, 1854, Dig-nowitty came to my house in San Antonio.   I had my child in my arms ; it was sick ; the daughter of D. C. Van Derlip, a sprightly child of from ten to twelve years of age, was in the room with me.   Mr. Dignowitty said he wished to see me alone ; Miss Van Derlip went out of the room ; he then said, " Mrs. Francis, I would like to see that contract between us ;" I got the paper out of my trunk and handed it to him ; he turned around, put it in the fire (where it burned up,) and said, turn-ing to me, " now Madam we are even, you owe me nothing and I owe you nothing."   I replied, " why did you do that ?" he said " I can now get two hundred dollars for this lot, and I want money."   He left my house ; I gave my sick child to Miss Van Derlip, and followed him.   He went to John Layer's and offered to sell the lot at $200 ; he said he had got back his bond from Mrs. Francis, and he was at liberty to dispose of the lot.   I told Layer that he had destroyed the contract, and Layer said

he would not purchase then at any price. I went the same day and made complaint to the Mayor. This was in April, 1854. The money was not due until August after; I would have been ready to pay for the lot when the money became due. The contract was my property. In September, after suit instituted, his lawyer, Stribling, presented me with a deed for the lot; I paid him the money and took the deed. I still own the property.

Cross-examined: Dignowitty spoke of administering on the estate of my husband; wanted me to administer on it; I told him I was unable to do so. I had no idea, when I gave him the contract, that he would destroy it. He asked me to let him look at it; I handed it to him like I would have done to any other gentleman. The contract was executed to my husband William Francis and myself.

John Layer, for the defence, testified that defendant offered to sell him the lot, as he had got back the bond from Mrs. Francis; that Mrs. Francis appeared at the same time, and told witness that defendant had destroyed the paper; that thereupon witness declined purchasing. Heard Mrs. Francis, in a subsequent conversation, talking about selling one of her lots so as to enable her to build on the other.

William Annin, for the defence, testified that Mrs. Francis came into Vance's store, where witness was a clerk, one or two days after the transaction, and asked what course she should pursue in regard to the matter; told witness that defendant had torn the paper; witness' impression from what she said was that she had been persuaded to prosecute defendant by persons inimical to him; that she told witness that defendant had destroyed the paper, and that she had not made up her mind what to do.

The defendant offered in evidence his recognizance, taken on the 20th day of April, A. D. 1854, and the docket of John M. Carolan, Mayor and, ex-officio, Justice of the Peace of Bexar county, showing that the preliminary examination of said defendant was held, and process issued on the 19th and 20th days of April, A. D. 1854.

The Judge charged the jury, without request, as follows :

1st. The prisoner at the bar, A. M. Dignowitty, is charged with the stealing, taking and carrying away a certain instrument of writing, containing evidence of an existing contract for the conveyance of land in this city, the property of Matilda Francis.

2d. If, from the evidence, you believe the defendant guilty of having taken or received from the hands of Matilda Francis, the instrument described in the indictment, and that such instrument was unlawfully destroyed by the prisoner, without the consent of the owner, and with a view to benefit himself, by depriving Mrs. Francis of that paper, then the prisoner is guilty as charged, and you will assess the punishment, in your verdict, at imprisonment at hard labor in the penitentiary for a term, not less than one year, nor more than five years.

3d. If however you believe that the paper was destroyed by the accused under an agreement, or understanding with Matilda Francis, her subsequent prosecution will not raise it to the grade of a criminal transaction.

4th. If from the evidence you entertain a well grounded or reasonable doubt, as to whether the prisoner destroyed the paper under the circumstances set forth in charge No. 2, or under agreement with Mrs. Francis, which agreement was an existing one, at the time of the destruction of the bond, then you will give the prisoner the benefit of such reasonable doubt and acquit him.

The defendant requested the Judge to instruct the jury as follows :

If the paper or contract, alleged to have been stolen, was not the sole property of Matilda Francis, or, if other parties, or any other party had an interest therein, in such case you cannot convict the defendant.

If the paper was made to William and Matilda Francis, and they had a child, or children living at the time of the alleged destruction, then, said William being dead, his interest in the property became vested in such child or children.

I decline giving this instruction.    (Signature of Judge.)

Further : 1st. If the instrument were merely destroyed and not taken with felonious intent, the jury will return a verdict of not guilty.

2d. To find the defendant guilty of the charge contained in the indictment, the jury must believe, from the evidence, that the instrument described in the indictment was a valid, subsisting contract ; that it was feloniously taken and carried away by the defendant ; and that it was of the value of twenty dollars.

I decline giving instructions Nos. 1 and 2.    (Judge's signature.)

3d. The jury cannot find the defendant guilty, unless they believe from the evidence the instrument alleged to have been stolen was of the value of twenty dollars.

I give this instruction with the qualification that, if you find her, Mrs. Francis' interest in the paper was of the value of twenty dollars, such interest makes the paper of sufficient value within the meaning of the law.    (Signature of Judge.)

Verdict of guilty, and punishment assessed at one year in the penitentiary.

Motion for a new trial on all the grounds usually taken, and on the further ground stated in defendants affidavit as follows :

Anthony M. Dginowitty, being duly sworn, deposes and says that, in the trial of the foregoing cause, Francis McCann is a most important witness ; that said witness knows and can prove that Matilda Francis urged this deponent, at various times prior to the alleged destruction of the instrument charged to have been stolen, to cancel such instrument, inasmuch as she was and would be unable to pay for the lot of land therein contracted for ; that deponent repeatedly refused to cancel the same, but was finally prevailed upon so to do ; and that the destruction of said instrument took place in consequence of an understanding and agreement between said Matilda and himself.    Deponent says that said McCann is not now a resident

of, but lives beyond the limits of this State, where the process
of this Court cannot reach him.   Deponent further says that
he expected to prove by John Leyer the state of facts above
referred to, the said Layer having led him to believe that he
could do so, by statements made and intimations given to this
deponent ; that in consequence of the statements and intima-
tions of said Layer, he thought himself entirely safe, and did
not exert himself to procure the attendance of said McCann ;
but that, contrary to deponent's expectations, and to his great
surprise, the said Layer did not testify to anything of what he
had led this deponent to believe he would testify to.   Where-
fore deponent believes that his conviction in the above case was
owing to the security, which he was led to feel from the inti-
mation aforesaid ; that, if a new trial is granted him, he will
be able to procure the testimony of said McCann, by the pro-
duction of which testimony he believes the entire aspect of
his case will be changed, and justice done to him by removing
any and all suspicion on the ground of a charge, of which he is
totally innocent.

In answer to which was the affidavit of John Layer, as fol-
lows :

Personally appeared before me, the undersigned authority,
John Layer, who being duly sworn, upon oath says that he
never had any conversation with the said Dignowitty in
reference to the above charge ; that he never had any
conversation with the said Dignowitty about the destruction
of the obligation between him (the said Dignowitty) and Ma-
tilda Francis, after the time deposed to by him on the trial of
said cause, in the District Court Fall Term, A. D. 1856 ; that
he never made statements, nor gave intimations to said Digno-
witty, which would lead him to believe that affiant could
prove that Matilda Francis urged him, at various times prior
to the alleged destruction of the instrument, charged to
have been stolen, to cancel said instrument ; that he never, by
statements or intimations, led Dignowitty to believe that he

would  testify that  the  destruction  of said  instrument  took place in consequence of an  understanding  and agreement between  said  Dignowitty and  Matilda  Francis, and that  he  is totally ignorant of  any such agreement.

Motion for new trial overruled.    Judgment and appeal.

*Paschals & Stribling*, for appellant.

*Attorney  General*, for appellee.

WHEELER, J.   The two  grounds mainly relied  on for reversing the judgment are, 1st.  The charge of the Court ;  2nd, The overruling the motion in arrest of judgment.

Simple larceny is defined to  be " the  felonious  taking and carrying  away, of  the  personal  goods  of another."  (4 Bl. Com. 239.)   The  felonious  quality consists in the intention of the  prisoner to  defraud  the  owner, and to apply  the thing stolen to his own use.  (Id. 232 n. (8)  Am. from 18th London ed.; Arch. Cr. Pr. and  Pl. 362 n. (1)  6  edit.  by Waterman.)   If, therefore, the  intention of  the  accused  was, as  stated in the charge, to  benefit himself, by depriving  the  owner of  the property, it was felonious.   As  to  the  motive, though the charge does not use the word felonious in defining the crime, yet it requires the jury to find  the  intention  of the  accused to  have been  such,  as  necessarily to  constitute  the taking felonious, if  the  act  of  taking  was  such, as,  under  the  circumstances  to  constitute  the  crime  of  larceny.   Was  it such ?   There can scarcely be  a  possible  doubt,  that  the intention of the accused, in  asking  to see the  paper, was, to get possession of it, that he might destroy it.   But the charge of the  Court assumes, that it was  not  essential, to constitute the crime, that the  felonious intent should have  existed  at the time the accused received the paper from the hand of  the witness.   And such is the law.   The felonious  intent is an essential ingredient in  the crime of larceny ;  and it must exist at

the time of the taking ; for no subsequent felonious intention will render the previous taking felonious. (Ib.) But where the offender lawfully acquired the possession of goods, but under a bare charge, the owner still retaining his property in them, the offender will be guilty of larceny at Common Law in embezzling them. The principle is thus stated by Mr. Russell, in treating of the cases where it appears the goods were taken by delivery or consent of the owner : " It may, in the " first place, be observed, with respect to those cases where the "goods are obtained by delivery, that, if it appear that, al- " though there is a delivery by the owner in fact, yet there is " clearly no change of property nor of legal possession, but the " legal possession still remains exclusively in the owner, larceny " may be committed exactly as if no such delivery had been " made." (2 Russ. on Cr. 21.) And the doctrine is illustrated by many adjudged cases. Thus, if a master deliver property into the hands of a servant for a special purpose, as to leave it at the house of a friend, or to get change, or deposit with a banker, the servant will he guilty of felony in applying it to his own use ; for it still remains in the constructive possession of the owner. (2 Bl. Com. 229, n. (3) and numerous cases there cited ; Whart. Am. Cr. L. 572, 2nd edit.) So in the case cited by the Attorney Gen'l. (The People v. Call, 1 Denio, 120,) where the holder of a promissory note, having received a partial paymant from the maker, handed it to him to endorse the payment, and he took it away and refused to give it up, it was held that the possessisn remained in the owner, and that his subsequent conversion, being found to be felonious, was larceny ; that it was not essential that the felonious intent should have existed when the prisoner received the note. " If it came " upon him after the note had been received, and while he was " making the endorsement, or subsequently, (the Court said) " and was carried into effect by converting the property to his " own use, it was larceny." (Id. 124.)

It was said, " as every larceny includes a trespass, the tak-

" ing must be from the possession of another. But here it is neces-
" sary to discriminate carefully between what constitutes, in law
" a possession of property, and that which amounts only to its
" care and charge." (Id. 123,) " Where one having only the
" care, charge or custody of property for the owner, converts
" it *animo furandi*, it is larceny, the possession, in judgment of
" law, remaining in the owner until the conversion." (Whart.
Am. Cr. L. 572.) The principle is certainly applicable and
was rightly applied to the present case. The owner handed
the paper to the accused, at his request, merely that he might
see it. She did not intend to part with the possession. Nor,
in judgment of law, was she divested of the possession, while
the paper remained, for a mere temporary purpose, in the hand
of the accused. He merely had the privilege of taking it, for
the purpose of inspecting it in her presence. And though it
seems impossible to doubt that his intention, in applying to
see it, was, that he might destroy it, yet that was not essential
to constitute the crime. It was equally larceny if he conceived
the intention afterwards, and at the very moment when he did
the act.

It is certainly true, as counsel for the appellant have insisted,
that there are cases where the taking amounts to no more than
a trespass ; as where a man takes another's goods openly be-
fore his face, or before other persons, other than by apparent
robbery ; or having possessed himself of them, avows the fact
before he is questioned ; and where the prisoners entered an-
other's stable at night, and took out his horses and rode them
a considerable distance, and left them at an inn, and were af-
terwards found pursuing their journey on foot,— on a finding
by the jury, that the prisoners took the horses merely with in-
tent to ride, and afterwards left them, not intending to re-
turn or make any further use of them, it was held trespass and
not larceny. (2 East, P. C. 662 ; Whart. Am. Cr. L. 557.) In
all cases of this description, where the circumstances are such
as show that the taking was not with a felonious intent, it will

amount to no more than a trespass. But it is otherwise where the taking is accompanied by circumstances which demonstrate a felonious intention ; as in the present case ; the accused professing a wish to see the witness alone ; his pretence that he wished merely to see the paper ; the destruction of it, in order to enable him to sell the property for a greater sum ; his representation to the person to whom he immediately proposed to " sell, that he had got back his bond from Mrs. Francis," evidently intending to suppress and conceal the fact that he had destroyed it against her will, and to create the impression that the contract had been cancelled and the bond given up by her consent. The charge of the Court fairly-submitted to the jury the question of intention ; and the circumstances seem to demonstrate that it must have been fraudulent and felonious, beyond a doubt. At least, the jury were well warranted by the evidence in so finding.

The charge required the jury to find that the intention of the accused was to benefit himself. In this it was more favorable to the accused than, in strictness, he was entitled to ask. There can be no doubt that was his intention ; and upon the facts of the case the charge was very proper. But to constitute the felonious intent, it is not necessary that the taking should be done *lucri causa ;* taking with an intention to destroy will be sufficient to constitute the offence, if done to serve the offender, or another person, though not in a pecuniary way. (2 Russ. on Cr. 3, 6th Am. from 3d London edit ; 4 Bl. Com. 232, n. (8); Arch. Cr. Pr. and Pl. 362, n. (1.)

The supposed insufficiency of the indictment, which was the ground of the motion in arrest of judgment, is in that it does not describe, with the requisite certainty, the instrument which was the subject of the larceny. This objection is not tenable. In larceny the particular quality of the thing, or terms of the contract stolen, do not enter into or constitute an ingredient in the offence. Particular descriptions of the articles stolen are not therefore held to be necessary ; if it be described spe-

cifically by the name usually applied to it, that will be sufficient. Thus, in an indictment for stealing a book, it was held sufficient simply to describe it as a book of a certain value, and that the title of the book need not be stated. (1 Miss. R. 377 ; Whart. Am. Cr. L. 430.) And in statutory offences, the description given in the law creating the offence, has, in general, been deemed sufficient. (Id. 131.) " This doctrine (says " Wharton) is founded partly on the fact that the prosecutor is " not considered in possession of the article stolen, and is not " therefore enabled to give a minute description ; and partly be- " cause, notwithstanding the general description, it is made cer- " tain to the Court from the face of the indictment, that a crime " has been committed if the facts be true." (Ib.) The indictment describes the instrument by its specific designation in the statute. (Hart. Dig. Art. 523.) and contains all the further certainty of description, which the authorities, and precedents in simlar cases, would warrant the Court in requiring. (Ibid. Precedents of Ind'ts, by Wharton, 196, 197, *et seq.*)

Nor is the objection to the conviction tenable, that the proof did not sustain the averment in the indictment, of property in Mrs. Francis. The rule is, that where one person has the general and another a special property in the thing, the property may be averred in the indictment to be in either. (9 Tex. R. 115.) And it follows that proof of either a general or special property in the alleged owner, will be sufficient to warrant a conviction. The proof puts it beyond doubt that Mrs. Francis had a property in the contract of value more than sufficient to support the conviction under the statute. (Hart. Dig. Art. 523.)

The application for a new trial, resting on the unsupported affidavit of the party, was manifestly insufficient, though its force had not been impaired, by the counter affidavit, or by any thing appearing to the contrary of the matters deposed to by the accused. Nor was there error in receiving the counter af-

fidavit.   (Hyde v. The State, 16 Tex. R. 445.)    There is no error in the judgment and it is affirmed.

Judgment affirmed.