Finch v. Green.

JAMES M. FINCH

*vs.*

GEORGE W. GREEN.

This action is brought to recover damages for the overflowing of plaintiff's land by means of defendant's dam, as well as for an abatement of said dam, and an injunction against its maintenance. *Held,* that it is not competent for defendant to prove what instructions were given by him to the person who was employed by him to build the dam, and who had charge of its construction, as to the height to which it should be built, either as part of the *res gestæ,* or as showing that he did not act *willfully* in erecting the dam at a greater height than he had a right to do.

*Held,* that the court properly refused to instruct the jury that "the attempt to measure the actual height or fall of the stream by a process of instrumental levelings, is less satisfactory than, and must yield to actual, visible facts, because instrumental measurements are liable to accidents and mistakes."

This action is not purely legal, or purely equitable, but is of a mixed nature, being one in which both legal and equitable relief are sought. In accordance with *sections* 198 *and* 199, *ch.* 66, *Gen. Stat.,* the issues of fact herein were triable by the court, subject to the right of the parties to consent, or of the court to order that the whole issue, or any specific question of fact therein, be tried by a jury, or referred.

This action was tried by a jury, without any formal consent of the parties, or formal order of the court, but without objection, and at the close of the charge the jury were instructed to return a general

Finch v. Green.

verdict on the question of damages. The jury returned a general verdict for plaintiff, assessing his damages at $50.00. *Held*, that though the mode of proceeding was not strictly regular. there was a substantial consent of the parties to a trial by jury of the issues as to the existence of the nuisance, and quantum of damages, and the verdict is a sufficient foundation for a money judgment.

In addition to the general verdict, the following questions were propounded to the jury by the court, and answered as follows: " Is the stone dam higher than that of 1859, and if so, how much ?" Answer " Yes." " How high has the plaintiff authorized the dam to be raised above the bed rock?" Answer, " We find ten feet and three inches." *Held*, that the failure to answer the first question fully, is not in any event ground for a new trial, since, so far as appears, the question is altogether immaterial.

This action being brought under *sec.* 25, *ch.* 75. *Gen. Stat.* the abatement and injunction prayed for do not follow the recovery of damages as a matter of course, but their allowance rests in the sound discretion of the court. To aid the court in determining upon the allowance of the abatement and injunction, was the proper object of the questions propounded to the jury. The failure to answer the first question fully, admitting it to have been material, was something of which the court might complain, but would not be the subject of exception by the defendant under the circumstances of this case.

The findings of the jury in this case are not alone sufficient to authorize an abatement, or injunction.

Defendant having a right to maintain his dam at some height, there should be a specific finding as to how much of his dam must be abated or enjoined in order to relieve plaintiff's land from unlawful flowage.

No judgment having been entered in the case, and the presumption being that the court below will not upon the verdict and special findings of the jury render judgment for anything more than the damages awarded, there is no occasion to set aside the verdict, or grant a new trial.

. Counter affidavits may properly be received in opposition to a motion for a new trial on the ground of newly discovered evidence.

The plaintiff brought this action in the district court for Steele county, demanding damages for the overflowing of his land, occasioned by the defendant's mill-dam, an injunction against the maintenance of the dam, and its abatement.

The complaint alleges the erection of a dam in 1856, and its maintenance until 1867, which did not cause any overflow, or injury to plaintiff's land; that in 1867, defendant erected, at or near the place where the original dam was built, a new stone dam, which was higher than the old dam, and caused the injury of which he complained.

The answer alleges that the original dam was erected; was rebuilt in 1858, and was maintained until the building of the new stone dam, with the knowledge, consent, and license of the plaintiff; and that the new dam is no higher than the old one, and does not cause the overflow or injury of plaintiff's land to any greater extent.

The case was tried before a jury, neither party objecting, without any formal consent, or order of the court therefor.

On the trial the defendant asked one Tuttle, a witness called by him, who stated he was employed by defendant to build, and had charge of the construction of the dam, the following question: "At the time of building the present dam, what instructions did you have from the defendant as to the height to which the new dam should be built?" The plaintiff objected to this testimony on the ground that it was hearsay, and would permit the defendant to manufacture evidence for himself. The court sustained the objection, and defendant excepted.

Testimony was introduced as to the height of the dam, and the extent of the overflow, as ascertained by levels, taken by surveyors and engineers, with instruments for that purpose. Testimony was also introduced by both parties as to the height of the new dam, as ascertained by actual measurement, and its height as compared with the old dam. The bill of exceptions does not disclose what the testimony was.

At the close of the testimony the defendant requested the

Finch v. Green.

court to charge the jury, among other things: "That the attempt to measure the actual height, or fall of the stream, by a process of instrumental levelings, is less satisfactory than, and must yield to actual, visible facts, because instrumental measurements are liable to accidents and mistakes." The court refused so to charge, and defendant excepted.

The defendant also requested the court to charge the jury: "That he was not liable for any extraordinary accumulations of water, occasioned by natural causes, though incidentally affected by the dam." The court refused so to charge, and the defendant excepted.

The court gave in charge to the jury several propositions of law, at the request of the plaintiff, which were excepted to by defendant, the first four of which are as follows:

"It was not necessary for the plaintiff in order to save his right of action to watch the defendant building the dam, and caution him about getting it too high, nor was he bound to repeat his complaint, remonstrance or notice of the injury or quarrel with the plaintiff, or bring suit against him, or use any violence to resist the encroachment.

"If the defendant was aware that the dam at its present height would flow more land of the plaintiff than he had a right to flow, or if that fact was equally open to the notice of both parties, the plaintiff was under no obligation to complain of the height of the dam or the flowage; and the plaintiff would not forfeit or lose any right by his silence or tacit acquiescence in relation to the injury.

"It was not necessary for the plaintiff in order to protect his rights to make complaint or give notice to the defendant that the dam was too high so long as the defendant was aware of the height to which he had a right to build the dam, and was aware that the dam at the height to which

the stone dam was built, would flow more of plaintiff's land than he had any legal right to flow.

"When the act of the defendant in erecting the dam is an encroachment on the soil or rights of the plaintiff (an acknowledged tort) equally well known or equally open to the notice of both parties, it gives no right to the defendant to continue the encroachment, or to make a new encroachment upon plaintiff's soil or rights by erecting a new dam, and the plaintiff's silence and tacit acquiescence would not deprive him of his right of action against the defendant."

The court also charged the jury, without request, and instructed them to bring in a general verdict on the question of damages, and also submitted to them the following questions, which were answered by them as follows:

"Is the stone dam higher than that of 1859, and if so, how much?"   Answer, "Yes."

"How high has the plaintiff authorized the dam to be raised above the bed-rock?"   Answer—"We find ten feet and three inches."

The jury found a general verdict for the plaintiff, and assessed his damages at fifty dollars.

A bill of exceptions was settled and signed, and upon such bill and an affidavit of defendant showing that he had discovered since the trial that one Williamson knew certain facts essential and material to the defense, not proved at the trial. &c., and an affidavit of Williamson disclosing such facts. the defendant made a motion for a new trial upon the following grounds:

"Error in law occurring at the trial and excepted to by defendant.

"Irregularity and insufficiency of the verdict.

"Misconduct of the jury.

"Newly discovered evidence material for the party making the application which he could not with reasonable diligence have discovered and produced at the time."

Upon the hearing of the motion, the plaintiff offered counter affidavits contradicting the important statements of Williamson's affidavit. The defendant objected to the reception of these counter affidavits. The court overruled defendant's objection, received the affidavits, and denied the motion; and from the order denying the same, the defendant appeals to this court.

GORDON E. COLE for Appellant.

BATCHELDER & BUCKHAM for Respondent.

*By the Court*—BERRY, J.—Plaintiff brings this action to recover damages for the overflowing of his land by reason of a dam, which, as he claims, defendant has erected and maintains at a greater height than he has a right to do. Plaintiff also prays for an injunction and abatement.

I. Upon the trial defendant asked one Tuttle, a witness called by him, and who stated that he was employed by defendant to build, and had charge of the construction of the dam, the following question: "At the time of building the present dam, what instructions did you have from the defendant as to the height to which the new dam should be built?" The defendant contends that this question was improperly rejected. He argues that this is an action for an injury to real estate in which exemplary damages may be awarded if it appears that he has wilfully committed the wrong charged, and that it was therefore proper for him to give the instructions in evidence as part of the *res gestæ* for the purpose of showing that he did not *wilfully* erect the

Finch v. Green.

dam at a greater height than he should have done; in other words, for the purpose of showing that he acted with good motives and intentions.

There is no suggestion appearing in the case as to what answer was expected to be given to the question asked, but assuming that it would have been favorable to the defendant, we think the question was properly excluded. To make the instructions inquired for admissible as part of the *res gestæ*, it would be necessary that they should be so connected with the " main fact," which was in this instance the building of the dam of the height at which it was built, as to *illustrate its character.* 1 *Gr. Ev.* § 108; *Lund vs. Inhab. Tynssborough,* 9 *Cushing* 36.

Certainly it will not be contended that the instructions or declarations, as they may be regarded, inquired for in this instance, could have any tendency to illustrate the character of the dam, as of one height, or another, nor could they tend to make more clear, or give any peculiar significance to the " main fact." *See Nutting vs. Page,* 4 *Gray* 584.

They could not go to illustrate or give significance to the " main fact," as do those declarations which are received as part of the *res gestæ* on the ground that they are expressive on the character, motive or object of a main fact, and as verbal acts indicating a present purpose or intention, for these are cases where such character, motive or object determines the *essential nature* of the main fact itself. 1 *Gr. Ev.* § 108, *and cases supra.*

The instructions were therefore properly rejected under the general rule excluding hearsay.

There is still another good reason given by the plaintiff why there was no error in rejecting the question under consideration, and that is that it does not appear by the case

that any attempt was made by the plaintiff to show, nor was it claimed that the defendant's acts complained of were *wilfully* committed, and under this state of the evidence, there was no occasion for the defendant to exculpate himself from that with which he was not charged.

II.  The defendant requested the court to instruct the jury that, "the attempt to measure the actual height or fall of the stream by a process of instrumental levelings, is less satisfactory than, and must yield to actual, visible facts, because instrumental measurements are liable to accidents and mistakes."  We think this instruction was properly refused.

Assuming that the instruction refers to such actual and visible facts only as have some tendency to throw light upon the subject of inquiry, it could hardly be contended that all instrumental levelings, no matter how skillfully made, or carefully verified, are less satisfactory than, and must yield to all kinds of such actual and visible facts, no matter how remote their reference to the matter in issue, nor how doubtful their proper application, or the inference to be drawn from them.  Even as applied to that part of the testimony reported in the case stated, we think the instruction was too broad, and was calculated to mislead the jury; and as the evidence is not all reported, we cannot say what effect it might have had as applying to all the testimony adduced upon the trial.

III.  There was no error in refusing to charge that defendant was "not liable for any extraordinary accumulations of water occasioned by natural causes, although incidentally affected by the dam," since, so far as the case shows, there was no evidence offered to which the instruction requested could have any application.

IV. We do not think that the first four instructions given at plaintiff's request are obnoxious to the objection urged against them by the defendant.

We understand this objection to be that the instructions in effect inform the jury that the limitation law found in *sec. 17, page 241, Gen. Stat.* does not bar the plaintiff's right of action for damages although the dam complained of was erected more than two years before plaintiff's suit was commenced. We do not think this is the meaning of the instructions.

When fairly construed they have no reference to the statute referred to, but their manifest purpose was to inform the jury, irrespective of any question arising upon the limitation law, that the plaintiff would not lose his right of action because he did not watch the defendant, or caution him, or complain of him, or bring suit against him, &c., &c.

V. This is an action in which the plaintiff seeks to recover damages for a nuisance, and an abatement of such nuisance, together with a perpetual injunction against its maintenance or continuance; to all which he is upon a proper showing entitled by *sec. 25, ch. 75, Gen. Stat.* under which this action is manifestly brought.

The action is not purely legal, nor purely equitable, but is of a mixed nature, since it is one in which both legal and equitable relief are sought.

In accordance with the provisions of *sections* 198 *and* 199, *ch.* 66, *Gen. Stat.* the issues of fact in this case were triable by the court, " subject to the right of the parties to consent, or of the court to order that the whole issue, or any specific question of fact involved therein, be tried by a jury, or referred."

In this case there seems to have been no formal consent

of parties to a trial by jury, nor any formal order of the court settling the issues in the case and submitting the same to a jury in accordance with *Berkey v. Judd*, 14 *Minn.* 394; but, as the record states, " the action was tried by a jury, and no objection made by either party," and at the close of the charge, the jury was instructed by the court to return a general verdict on the question of damages. The jury returned a general verdict for plaintiff, assessing his damages at fifty dollars. Although this mode of proceeding was not strictly regular, we think there was a substantial consent of the parties to the trial by jury of the issue as to the existence of the nuisance, and *quantum* of damages.

To this general verdict then we see no objection. It is a sufficient foundation for a money judgment. This case is to be distinguished from *Guernsey vs. American Ins. Co.* (decided at this term) in which case there were *two* causes of action, while in the case at bar there is but *one*, and to that one the action of the parties in proceeding to a trial by jury must necessarily be referred.

But in addition to the general verdict, the following questions were propounded to the jury by the court, and answered as follows

" Is the stone dam higher than that of 1859, and if so, how much ?" Answer, " Yes."

" How high has the plaintiff authorized the dam to be raised above the bed-rock ?" Answer. " We find ten feet and three inches."

The defendant argues that he is entitled to a new trial because the answer to the first question is defective in not finding upon all the issues thereby submitted. It is a sufficient answer to this claim to say that there is nothing whatever in the return in this case to show for what purpose, or

in what view, the first question was material, or, in other words, of what importance it was to ascertain the height of the dam complained of as compared with the height of the dam of 1859, so that, so far as appears, the question was wholly immaterial.

It follows, that so far as we have any means of ascertaining, a failure to answer the question in whole, or in part, could prejudice no substantial right of the defendant, nor furnish any ground for a new trial.

But aside from this answer to defendant's objection, it is to be observed that these questions were asked under *sec.* 218, *ch.* 66, *Gen. Stat.* which provides that in all cases the court may instruct the jury "if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon."

In actions of this kind *sec.* 25, *ch.* 75, *Gen. Stat.* enacts, that "by the judgment the nuisance may be enjoined, or abated, as well as damages recovered."

The abatement and injunction, then, do not follow the recovery of damages as a matter of course, but their allowance rests in the sound discretion of the court.

It is then for the *court* to determine whether upon the facts appearing the abatement and injunction should be allowed.

To aid the court in determining this question, was, as we conceive, the only proper object of both questions

Admitting then that the first question was material for the purpose, the failure to answer it fully, was something of which the court might, if it saw fit, complain, but it could not be the subject of exception by the defendant under the circumstances of the case.

We do not think, however, that the findings of the jury in this case are alone sufficient to authorize an abatement or

injunction; for it is undisputed that the defendant has the right to maintain the dam at some height, and, as the jury have found, at the height of ten feet and three inches above the bed-rock; so that if he maintains it at a greater height than he has a right to do, and thereby unlawfully overflows plaintiff's land, plaintiff cannot demand that the dam shall be wholly removed, but that only so much of it shall be removed, as is necessary to put a stop to the unlawful flowage.

We think, then, that in order to lay a proper foundation for judgment of abatement, or injunction, there should be a specific finding as to how much of defendant's dam must be abated and enjoined, in order to relieve plaintiff's land from unlawful flowage.

As no question of this kind was, so far as the record shows, submitted to the jury, it must be determined by the court

It follows that it would not be proper to award an abatement, or injunction, upon the general verdict or special findings of the jury in this case.

But no judgment has been entered in this action, and the present appeal is from an order refusing to set aside the verdict and grant a new trial. There is no reason to suppose that the court below will upon the verdict and special findings render judgment for anything more than the damages. Indeed the presumption is, that as that would not be proper, it will not be done.

So far, then, the defendant has no reason to complain of the verdicts, or of any judgment which has been, or is likely to be entered upon them, and his motion to vacate and for a new trial, so far as it was based upon objections to the verdict, was well denied.

Finch v. Green.

VI.   Lastly, the defendant claims that he is entitled to a new trial on account of the newly discovered evidence shown by the affidavit of Williamson.

The counter affidavits offered by the plaintiff were properly received.

The application, which is addressed to the sound discretion of the court, is based upon the ground that there has not been a fair trial upon the real merits, and for this reason it is proposed to compel a party, who has once litigated the matter in controversy, to litigate it a second time.

Why should not such party be permitted to produce counter affidavits for the purpose of showing that the alleged ground for a new trial has no existence?

We think no good reason can be given why he should be concluded by the *ex parte* affidavits of the moving party, nor do we understand such to be the practice. *Mead vs. Constans*, 5 *Minn.* 171; *Eddy et als. vs. Caldwell*, 7 *Minn.* 225; *Parker vs. Hardy*, 24 *Pick.* 246; 3 *Graham & W. on New Trials*, 1069; *Williams vs. Baldwin*, 18 *Johns.* 489.   The important statements in the affidavit of Williamson were flatly contradicted in the counter affidavits.

Without then considering the question of defendant's diligence, or the competency or materiality of the alleged newly discovered evidence, we see no warrant for saying that the court below, upon comparing the affidavits and counter affidavits with reference to the question whether a new trial would be likely to produce any different result from the first trial, erred in refusing the application, so far as based upon the ground under consideration.

Order affirmed.