[Crim. No. 1111.  In Bank.—September 27, 1904.]

## THE PEOPLE, Respondent, v. SING YOW, Appellant.

CRIMINAL LAW—CONVICTION FOR MURDER—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION.—After conviction of a defendant for murder, affidavits upon motion for a new trial for newly discovered evidence, in conflict with that given on the trial, and directed to the impeachment of witnesses who had testified at the trial, were addressed to the sound legal discretion of the trial court; and where it is not clear that such evidence, if received, would or should have changed the result, the discretion of the court in denying the motion will not be disturbed.

ID.—COUNTER-AFFIDAVITS.—Upon such motion for new trial it was proper for the court to receive counter-affidavits to enable it properly and intelligently to exercise its discretion in passing upon the motion, and to determine whether a new trial would promote justice or result, with reasonable probability, in a different judgment.

ID.—CHARGE OF INTERPRETERS—INSUFFICIENT AFFIDAVIT.—An affidavit by defendant's attorney that the interpreter who officiated at the trial of the defendant was relieved upon the trial of another defendant, but which does not show that the interpreter was not in fact competent, is insufficient.

ID.—MISCONDUCT OF DISTRICT ATTORNEY.—It must be a very exceptional case in which a reversal will be ordered by reason of the character of the opening statement of the district attorney; and where such statement was warranted by the evidence, and where there is nothing of such gravity or importance in his cross-examination of the witnesses as to warrant a reversal, and the court carefully instructed the jury to disregard a statement by him in response to the query of the court as to the object of a question asked on cross-examination, there is no misconduct prejudicially affecting defendant's cause.

ID.—EVIDENCE—DECLARATION OF CONFEDERATE — RES GESTÆ. — Where there is evidence that the defendant and five other Chinese, all
CXLV. Cal.—1

armed, who co-operated in the killing of the deceased, were stand-
ing in front of a house out of which the deceased was to come,
evidence is admissible to show, as part of the transaction, a declara-
tion by one of the confederates, then made, that "if Jeong Him
[deceased] comes out of the house, we will shoot at him," which
was followed by his death from shooting by the confederates when
he came out a few moments later.

ID. — INSTRUCTIONS — IDENTITY OF DEFENDANT — MODIFICATION OF RE-
QUESTED INSTRUCTION NOT PREJUDICIAL.—A requested instruction as
to the identity of the defendant, from which the court struck out
a statement that the jury were not bound to believe that the
witnesses were able to identify the defendant with certainty,
because they swore positively to his identity, was not modified
prejudicially where the jury were instructed that to justify a con-
viction of the defendant his identity must be proved beyond reason-
able doubt, and that if there was a reasonable doubt as to the
ability of the witnesses to identify him as the guilty person, they
should acquit him.

ID.—REFUSAL OF REQUESTED INSTRUCTIONS OTHERWISE GIVEN.—It is not
error to refuse requested instructions which are fully and fairly
covered by other instructions given by the court.

ID.—JUDGMENT-ROLL—BILL OF EXCEPTIONS—INSTRUCTIONS—AFFIDAVITS.
—Where the instructions given and refused are certified in the
manner required by law they constitute a part of the judgment-
roll, and should not be incorporated in the bill of exceptions; but
affidavits presented on a motion for a new trial and the minutes
of the proceedings had upon such motion should appear only in the
bill of exceptions, and the clerk cannot make them a part of the
judgment-roll.

APPEAL from a judgment of the Superior Court of
Sacramento County and from an order denying a new trial.
E. C. Hart, Judge.

The facts are stated in the opinion of the court.

Hiram W. Johnson, for Appellant.

U. S. Webb, Attorney-General, and C. N. Post, Assistant
Attorney-General, for Respondent.

ANGELLOTTI, J.—The defendant and four others were
jointly informed against in the superior court of Sacramento
County for the murder of one Jeong Him, and upon a sep-
arate trial he was convicted of murder in the first degree
and adjudged to suffer death. He appeals from the judg-
ment and from an order denying his motion for a new trial.

1. The principal point made upon this appeal is as to the action of the trial court in refusing to grant defendant's motion for a new trial on the ground of newly discovered evidence.

The evidence on the part of the prosecution on the trial of the case was to the effect that the defendant and five other Chinese were waiting for the deceased outside of a house in Walnut Grove, Sacramento County; that when he came out to the street three of these men each fired a shot at him, and the deceased taking to flight, the three others, of whom defendant was one, pursued him for some distance to a stable, and that each of the three fired pistol-shots at him. The deceased was found at this place dead, with some seven gunshot wounds in his body. There was ample testimony on the part of white witnesses to warrant the conclusion that the deceased was pursued by three armed Chinese to the stable, where several shots were fired. Several Chinese testified as to the identity of the six Chinese charged to have been concerned in the perpetration of the crime.

On the part of the defendant it was claimed that he was not in Walnut Grove at the time of the shooting, but was several miles therefrom, and that two other Chinese, whose names were not given, did the pursuing and shooting, and testimony to this effect was given.

Upon the motion for new trial, to support the claim for a new trial on the ground of newly discovered evidence, there were filed the affidavits of two Chinese, each of whom stated that he witnessed the homicide, that defendant had nothing to do with it, and that it was committed by two men named Young Lung and Yee Jim.

The other affidavits filed by defendant, except those directed to showing due diligence, were directed entirely to the impeachment of certain witnesses who had testified on the trial. The object of the affidavits of three police-officers of Fresno and one Chinese was to show that Lee Bin, who had testified that he witnessed the pursuit and killing of the deceased by the defendant and two others, was at the time thereof in the city of Fresno, and that of the other affidavits, all of which were made by Chinese, was to show that three of the defendants jointly charged with this defendant, and identified as having been present and having participated in the crime,

by witnesses for the prosecution, were not in fact present thereat, but at the time thereof were elsewhere. Six of these affidavits were filed, two as to each of said defendants.

Assuming the showing as to diligence to have been sufficient, it is very clear to us that even if no counter-affidavits had been filed the ruling of the trial court in refusing to grant the motion for a new trial on account of newly discovered evidence could not be disturbed. It has been repeatedly said by this court that a motion for a new trial on this ground is addressed to the sound legal discretion of the trial court, and that the action of that court will not be disturbed, except in an instance manifesting a clear abuse of such discretion. A defendant is not entitled to a new trial as a matter of right simply because he has discovered new evidence which might have been admitted on the trial, if discovered earlier. The question always exists in this connection as to whether under all the circumstances of the case the newly discovered evidence is produced in such a way, and is of such a nature, that its introduction upon another trial would render a different result reasonably probable, and as to whether, in the absence of such evidence, the defendant has had a fair trial on the merits.

The law does not contemplate the granting of a new trial on this ground simply to enable the defendant to go through the form of another trial, where there is no reasonable probability that the newly discovered evidence will change the result, and where it does not appear that by reason of such evidence the result ought to be different.

The question as to the effect upon the case of the newly discovered evidence is from its nature peculiarly one that is addressed to the discretion of the trial court, and, of course, should be determined by that court with a full realization of the responsibility involved, and the motion should undoubtedly be granted where the showing is such as to make it apparent to the trial court that the defendant has, without fault on his part, not had a fair trial on the merits, and that by reason of the newly discovered evidence the result would probably be, or should be, different on a retrial. But unless the appellate court can plainly see that this discretion has been abused, that the showing made was of such a character as to make it manifest that the case would or should result

differently on a new trial, in view of the newly discovered
evidence, the order of the trial court refusing a new trial will
not be disturbed. (*Oberlander* v. *Fixen & Co.*, 129 Cal. 690,
692. See, also, *People* v. *Demasters*, 109 Cal. 607; *People* v.
*Buckley*, 143 Cal. 375.)

The showing made by the affidavits presented on behalf of
defendant was not such as to warrant us in holding that the
trial court abused the discretion confided to it in this matter.
In view of the evidence given on the trial, the trial court
was amply warranted in concluding that the showing made
by the affidavits of the two Chinese who deposed that they
witnessed the homicide and that defendant was not a party,
and the affidavits of the six Chinese who deposed, in couplets,
as to the presence at places away from the scene of the homi-
cide of three of this defendant's co-defendants, was not such
as to indicate that a new trial ought to be granted that their
evidence might be obtained, or that the introduction of such
evidence would make a different result reasonably probable.
The same may be said as to the affidavits relating to the wit-
ness Lee Bin. The affidavits of the three white witnesses are
not inconsistent with the testimony given on the trial as to
the presence of Lee Bin in Walnut Grove at the time of the
homicide, and showed at most some conflict as to precisely
how long before the homicide he had left Fresno.

It is urged, however, that the rule as to the discretion of
the trial court cannot be invoked in this case, for the reason
that the trial court, over the objection of defendant, errone-
ously allowed the prosecution to present counter-affidavits on
the motion for new trial as to certain of the facts proposed
to be shown by the newly discovered witnesses. The counter-
affidavits of certain white and Chinese witnesses to the effect
that Lee Bin did leave Fresno early in November, and others
contradicting the allegations of defendant's affidavits as to
the whereabouts of two of the co-defendants, were received
over the objection of defendant, and, presumably, considered
by the court in deciding the motion.

We are of the opinion that the court did not err in receiving
these affidavits, or in taking them into consideration in de-
termining the question as to whether a new trial should be
granted. To hold otherwise would be to make it necessary
for the trial court in many cases to grant a new trial upon

the *ex parte* affidavits of perjured witnesses, where it is easily within the power of the other side to demonstrate that the new witnesses are utterly unworthy of credit, and that the allegations of their affidavits are entirely without foundation, and can be overwhelmingly overcome by the evidence of reputable persons. In such a case it would be manifest that the interests of justice did not demand a new trial, that no substantial right of the defendant had been impaired by his failure to produce the evidence on the trial, and that there was no reasonable probability of a different result by reason of such newly discovered evidence.

As has already been shown, it is well settled in this state that it is for the trial court to determine whether or not the newly discovered evidence is of such a character as to make it reasonably probable that it would produce a different result on another trial, and in the determination of that question we can conceive of no good reason why the trial court should be limited to a consideration of the affidavits offered by defendant and the record of the trial. Such certainly has not been the practice in this state. In *People* v. *Fice*, 97 Cal. 459, the record shows that the counter-affidavits were entirely devoted to a contradiction of the alleged facts proposed to be proved by the newly discovered witnesses, and this court said: "Upon the ground of newly discovered evidence it is sufficient to say that the affidavits offered in support thereof were fully contradicted by counter-affidavits on the part of the prosecution, and for that reason the court below exercised a proper discretion in refusing to grant the motion." (See, also, *Thompson* v. *Thompson*, 88 Cal. 110; *People* v. *Mesa*, 93 Cal. 580; *Merk* v. *Gelzhaeuser*, 50 Cal. 631; *Doyle* v. *Sturla*, 38 Cal. 456.) It has been held in many cases in other states that it is entirely competent to show by counter-affidavits on motion for new trial that a newly discovered witness is unworthy of credit. (*Williams* v. *Johnson*, 18 Johns. 488; *Parker* v. *Hardy*, 24 Pick. 246; *Pomeroy* v. *Columbia Ins. Co.*, 2 Caines, 260; *Erskine* v. *Duffy*, 76 Ga. 603; *Greenleaf* v. *Grounder*, 84 Me. 50; *Moore* v. *State*, 96 Tenn. 209; 1 Graham and Waterman on New Trials, *p. 485.) In other cases, counter-affidavits as to the alleged facts to be testified to by new witnesses were allowed. (*Coast Line R. R. Co.* v. *Boston*, 83 Ga. 387; *Harmon* v. *Charleston etc. Ry. Co.*, 88 Ga. 261;

*Harris* v. *Rupel,* 14 Ind. 209; *Searcy* v. *Martin-Woods Co.,* 93 Iowa, 420; *Ames* v. *Howard,* 1 Sum. 482; *Lorig* v. *Davenport,* 99 Iowa, 479; *Finch* v. *Green,* 16 Minn. 355; *State* v. *Burd,* 115 Mo. 405; *Burlingame* v. *Cowee,* 16 R. I. 40; *Dignowitty* v. *State,* 17 Tex. 521; *Nicholas* v. *Commonwealth,* 91 Va. 741; *Holland* v. *Huston,* 20 Mont. 84; *Hammond etc. Ry. Co.* v. *Spyzchalski,* 17 Ind. App. 7, 16.)

In a note, in volume 14 of the Encyclopedia of Pleading and Practice, page 913, it is said that it is uniformly held that on the hearing of such a motion the court may examine counter-affidavits to determine whether a new trial would promote justice or result in a different judgment.

It is true that a different rule has been laid down in Illinois, and that rulings excluding counter-affidavits have been made in one or two other jurisdictions, but the great weight of authority is to the effect that the court may consider counter-affidavits for the purpose of determining whether the interests of justice demand a new trial, and as to whether there is a reasonable probability that a new trial will by reason of such newly discovered evidence result differently.

The argument of those claiming otherwise is, that the unsuccessful party should have the opportunity of presenting the newly discovered evidence to another jury, whose exclusive province it would be to determine as to the credibility of the witnesses and the facts established by the testimony. But this argument loses sight of the object of the law relative to the granting of a new trial on account of newly discovered evidence, which is to allow a new trial where it is made to appear that the newly discovered evidence is of such a character that it cannot be said that the unsuccessful party has, in the absence thereof, had a fair trial on the real merits. This question is addressed to the trial court alone. In *Finch* v. *Green,* 16 Minn. 355, the supreme court of Minnesota said: "The application, which is addressed to the sound discretion of the court, is based upon the ground that there has not been a fair trial upon the real merits, and for this reason it is proposed to compel a party who has once litigated the matter in controversy to litigate it a second time. Why should not such a party be permitted to produce counter-affidavits for the purpose of showing that the alleged ground for a new trial has no existence? We think no good reason can be given

why he should be concluded by the *ex parte* affidavits of the
moving party. . . . We see no warrant for saying that the
court below, upon comparing the affidavits and counter-
affidavits with reference to the question whether a new trial
would be likely to produce any different result from the
first, erred in refusing the application.''

Such counter-affidavits are received and considered, as has
been said by some courts, simply for the purpose of enabling
the trial court to intelligently exercise the discretionary power
confided to it of determining whether or not the interests of
justice demand that a new trial should be had.

There is no decision of this court forbidding the practice
of presenting counter-affidavits. On the contrary, such prac-
tice has been fully recognized by the court as proper, for
orders denying new trials have been affirmed on the ground
that the showing made by the counter-affidavits justified such
orders. Defendant relies entirely upon some expressions con-
tained in a concurring opinion in *Shafer* v. *Willis*, 124 Cal.
41. While that opinion is entitled to the greatest respect, it
is not a decision of the court, and we are of the opinion that,
in so far as it may be in conflict with what has here been said,
it is contrary to our recognized practice and to the great
weight of authority.

2. An affidavit was presented, made by defendant's attor-
ney, setting forth certain proceedings upon the trial of an-
other defendant, which occurred subsequent to defendant's
trial, as to a change in interpreters, the result of which was,
that the Chinese interpreter who had officiated on the defend-
ant's trial and for a portion of the other trial was relieved by
the court, and another interpreter substituted, the claim of
the defendant being, that it was then made to appear that the
interpreter who had officiated on his trial was not competent
to interpret properly. We have carefully examined this affi-
davit, and assuming, for the purposes of this case only, that
the question as to such competency is reviewable here, find
nothing therein to warrant us in holding that the interpreter
was not in fact competent.

3. It is urged that the district attorney was guilty of mis-
conduct on the trial. A consideration of the points made in
support of this contention discloses no misconduct preju-
dicially affecting defendant's cause.

It must be a very exceptional case in which a reversal will be ordered by reason of the character of the opening statement of the prosecuting officer, and in this case the statement of the district attorney to the effect that he would show that the six Chinese met in front of the house in which the deceased was, in accordance with a preconceived purpose to kill him, was amply warranted by the evidence subsequently introduced as to the circumstances of the homicide.

In the cross-examination of witnesses Brown and Fitzgerald we find nothing of such gravity or importance as to warrant a new trial. There is nothing in the cross-examination of the witness Wise to call for notice, and the jury were very fully and carefully instructed by the court that they must disregard the statement made by the district attorney, in response to a query of the court, as to the object of a question asked by him of the witness Lin Tai, in cross-examination.

4. It is contended that the court erred in certain rulings as to the admissibility of testimony.

The evidence as to the statement made by defendant Ow Sing Dock immediately prior to the homicide, while the six Chinese were standing in front of the house apparently waiting for the deceased to come out, was admissible. As testified by Ah Hing, that statement was, "If Jeong Him comes out of the house, we will shoot at him." It was made in the presence and hearing of the five other armed Chinese, who, as the testimony for the prosecution indicated, had assembled there with him, for the purpose of killing, and who, with him, actually killed the deceased; upon his coming out a few moments later, and was practically a part of the transaction itself.

There is nothing in any of the other points made that requires notice.

5. Complaint is made that the court erroneously refused certain instructions requested by the defendant, and erroneously modified one such instruction. The modified instruction was one relating to the question of identity, and the court struck out therefrom a statement to the effect that the jury were not bound to believe that the witnesses were able to identify the defendant with certainty because they swore positively to his identity. The jury were instructed that to justify a conviction of the defendant his identity as the guilty person must be proved beyond all reasonable doubt, and that if there

was a reasonable doubt as to whether the witnesses were able to identify the defendant as the guilty person they should acquit him. They were further instructed that it was their exclusive province to judge of the credibility of the witnesses and the degree of weight and credit to be given to the testimony of each witness. Defendant could not have been prejudiced by the modification, in the respect stated, of his requested instruction. The requested instructions refused were fully and fairly covered by other instructions given by the court.

We can find nothing in the record that would warrant a reversal.

In view of the fact that the instructions given and refused, and the affidavits on motion for a new trial appear twice in the transcript, once in what purports to be the judgment-roll and once in the bill of exceptions, thereby enlarging the transcript by nearly one hundred and twenty pages, it is proper to suggest that no possible good can be accomplished by such a repetition, except in so far as the increase of the cost of printing may be considered an advantage.

Where the instructions given and refused are certified in the manner provided by law they constitute a part of the judgment-roll, and should not be reproduced in the bill of exceptions. On the other hand, affidavits presented on a motion for a new trial and the minutes of the proceedings had on such a motion constitute no part of the judgment-roll (Pen. Code, sec. 1207), and the clerk cannot make them a part thereof, and they should appear only in the bill of exceptions.

The judgment and order are affirmed.

Shaw, J., McFarland, J., Van Dyke, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.