THE COAST LINE RAILROAD COMPANY *v.* BOSTON.

1. There was sufficient evidence to sustain the verdict.
2. Under the facts, the verdict was not excessive.
3. The affidavit supporting the ground of newly discovered testimony was rebutted by a counter-affidavit.

July 8, 1889.

New trial. Evidence. Verdict. Before Judge HARDEN. City court of Savannah. November term, 1888.

On October 24, 1887, Belle Boston sued the railroad company for damages. Her testimony tended to show as follows.: About half past nine o'clock at night, she boarded a street-car of defendant to put her daughter on, intending to at once leave the car herself and walk home. The rear platform of the car was crowded, so she got on the front platform, which was not an unusual thing for passengers to do; told the driver, who was a boy, that she was going to put the child on and then get off; saw her sister in the car and put the child in her custody, and without entering the car started almost immediately to get off. In the meantime, the car had gone on for a little distance, but before plaintiff started to get off the driver stopped the car for her. She stepped first from the platform to the first step with her right foot, held on to the guard-rail with her right hand and put her left foot to the ground, her right foot being still on the step; when in the act of stepping down with her left foot, the driver whipped up the mules without any notice, and the sudden jerk of the

car threw her around against it and she fell. She held on to the guard-rail with her right hand, which caused her left arm to be thrown under one of the wheels of the car, where it was badly mashed; she was dragged a little distance. She was about two months with child at the time she was hurt, and had a miscarriage afterwards caused by this shock and injury. Before she was hurt, she washed and ironed for a living, averaging $35 a month after paying expenses. She was hurt on the 28th day of November, 1886, and did not get able to work again until March, 1887, and then went into service at $12 a month but could not do the work, and her wages were reduced to $8 or $10 a month. When she started off the car, she and the driver were the only persons on the front platform; the rear platform was so crowded she could not enter or leave the car by that platform. Her physician, Dr. Nichols, testified, among other things, that he examined her the night she was hurt; found the skin torn off the arm, the flesh and muscles of the arm mashed and bruised, and the bone of the upper arm scraped as if between two flat surfaces; the wound was a complicated one and did not heal; she suffered great pain and had hysterical attacks; the tissue around the bone was destroyed, and it caused the bone to decay partially and to emit an offensive odor; partial death of the bone ensued; abscesses formed and had to be opened with a knife several times, and the nerves of the arm were injured, which weakened the grasp of the little finger and the finger next to it. He testified that the injury would more or less affect the use of the arm for life; that he could not state what proportion of the capacity to work she had lost; that the bone at present, so far as appearances were concerned, was as strong as ever, but the strength was not there; the offensive odor ceased when the wound healed; she can move that arm freely now; women generally take the right arm to iron, and

she could use the right arm as well as if she had never received the injury, so far as motion was concerned, etc.; and that his bill was $75, which had not been paid. He attended plaintiff three days in November, and after that daily until December 20, 1886, and regularly, but not so often after that, until the second day of the following February. He did not testify as to the miscarriage.

The testimony for the defendent tended to show that plaintiff got in the car and then started out, and without giving notice to the driver, jumped off while the car was in motion, by reason of which she received her injury. The conductor of the car testified that, immediately after the accident, he asked her why she had jumped out while the car was moving, and that she said that it was going so slow she thought she could get off without hurting herself, etc. One Haygood testified, among other things, that he was on the front platform when plaintiff passed out of the door by him behind the driver, and putting one hand on the guardrail, jumped off with both feet and fell; that she may have stopped on the lower step, but if she did, it was with a motion so quick that he could not see any stop; that she did not ask the driver or any one else to stop the car; and that the driver did not strike the mules at all, but they were going along at a slow gait. Another witness for the defendant testified, among other things, that it was his best recollection that the car was moving all the time after he noticed plaintiff going towards the front door, until she had fallen; that he did see the driver strike his mules; did not feel any jerk of the car at that time, etc. The driver testified that he was driving slowly; that plaintiff did not ask him to stop the car for her to get off; that he did not know she wanted to get off; that he did not know she had fallen until he felt the jolt; that he did not strike the mules at the time; and that he felt her touch him as she passed be-

hind him, but did not know she was going to get off.

There had been a former trial of the case, upon which substantially the same evidence has been introduced as on the latter trial, except that the plaintiff had introduced the Carlisle tables of expectancy and annuity, but did not introduce them on the second trial; and there was no testimony at the first trial as to a miscarriage. On that trial, the jury found for plaintiff $1,250. The defendant moved for a new trial on the grounds that the verdict was contrary to law and evidence, and was excessive ; and a new trial was granted. On the second trial, the verdict was for the plaintiff for $1,240. The defendant, again moved for a new trial on the grounds that the verdict was contrary to law and evidence, and was excessive ; and because of the newly discovered evidence of R. E. Cobb.

The affidavit of Cobb in support of the last ground was substantially to the effect that, after the last trial, Dr. Nichols told him that if plaintiff had had any miscarriage, he did not know it, and she must have bundled it up and thrown it out without his knowledge; and that subsequently, Nichols told him he had, at each call made on her during her sickness, written down an account of the call, and there was no charge for any miscarriage on his books nor any mention of anything of the sort. In rebuttal of this affidavit, plaintiff produced the affidavit of Dr. Nichols. He swore, in substance, that in answer to the inquiry as to miscarriage in the first conversation, he told Cobb that it was just as likely that plaintiff may have had a miscarriage as not, and may have spoken to him about it, but he simply did not recollect; did not say that he had the details of each call written down and there was no charge for miscarriage; he may have said he had no record of any miscarriage ; in the second interview went into an explanation with Cobb as to how a woman could miscarry at an early period without the knowledge of her husband,

etc. Affiant further swore that, in all probability, plaintiff did mention to him her miscarriage; that he simply does not recollect; that such a circumstance, when at such an early period, would not impress itself on his memory, especially after two years.

The motion was overruled, and defendant excepted.

James Atkins, for plaintiff in error.

R. R. Richards and W. R. Leaken, contra.

Simmons, Justice.

Boston sued the railroad company for personal injuries, and recovered a verdict for $1,240. The defendant made a motion for a new trial, on the grounds that the verdict was contrary to law, to the evidence and to the charge of the court, and was excessive, and upon the ground of newly discovered evidence. The motion was overruled by the court, and the defendant excepted.

1. There was sufficient evidence to sustain the verdict of the jury.

2. Under the facts in the record, the verdict for $1,240 was not excessive.

3. There was no error in overruling the motion for a new trial upon the ground of the newly discovered testimony of Cobb. Cobb's affidavit was rebutted by the affidavit of Dr. Nichols.          Judgment affirmed.