The First National Bank of Richmond, Indiana, v. Gibbons.

No. 727.

THE FIRST NATIONAL BANK OF RICHMOND, INDIANA,
v. GIBBONS.

NEW TRIAL.—*Motion for Supported by Affidavits.*—*Counter Affidavits as to Diligence and Credibility.*—Where a motion is made for a new trial, upon the ground of newly discovered evidence, and the motion is supported by affidavits, counter affidavits may be filed questioning the exercise of diligence by the moving party, and also questioning the credibility of the newly discovered witness.

From the Wayne Circuit Court.

*C. H. Burchenal* and *J. L. Rupe*, for appellant.

*R. A. Jackson, H. C. Fox* and *J. F. Robbins*, for appellee.

LOTZ, J.—This action was brought by the appellee, plaintiff below, against the appellant, as defendant, to recover the amount of a certain draft, or bill of exchange, for $791.96, drawn by the Second National Bank of Hamilton, Ohio, on the Mercantile National Bank of New York, payable at sight to the order of the appellee, Amelia Gibbons.

The complaint was in two paragraphs. There was an answer in denial, and two paragraphs in confession and avoidance. The issues joined were tried by a jury, and a verdict was returned in favor of the appellee for the sum of $821.56, upon which final judgment was rendered. The errors assigned are that the court erred in overruling appellant's demurrer to each paragraph of the complaint; that the court erred in overruling appellant's motion to strike out and reject the counter affidavits in opposition to appellant's motion for a new trial, and that the court erred in overruling appellant's motion for a new trial.

The first paragraph of the complaint alleges, that the

plaintiff was the owner and lawfully entitled to the possession of the draft, which was payable to the order of plaintiff under the name and style of Amelia Gibbons; that the defendant, being in the possession of said draft, unlawfully converted and disposed of the same for its own use, and refused to deliver the same or its value to the plaintiff upon demand.

There is no averment as to the manner in which the defendant obtained the possession of the draft, or how it went out of the possession of the plaintiff, or whether any indorsement had been placed upon it by her; nor is it averred that the defendant had any notice or knowledge at the time of the conversion that the plaintiff had rights in the draft.

Appellant's contention is, that the draft, being commercial paper, if the plaintiff placed her indorsement upon it and entrusted it to the possession of any person for any purpose, the bank having no notice of any rights retained by her, might become a purchaser for value, with full right to convert or dispose of it, without being liable to her. That to make the complaint good these facts must be negatived.

The gist of the action, however, is the conversion of the draft. It is shown that the plaintiff was the owner of it at the time of its conversion. The pleader is not required to anticipate and negative every possible defense in order to make his complaint good.

The second paragraph sets out the facts much more fully than the first, but conversion is the *gravamen* of the action. There was no error in overruling the demurrers.

One of the causes for the motion for a new trial is that of newly discovered evidence. On the trial, the plaintiff testified, that she had not placed any indorsement on the draft, or authorized it to be done; that the indorsement

on the draft, purporting to be made by her, was not made in her handwriting; that she had not given or entrusted the draft to her husband for any purpose, and did not know of its being in his possession until after it had been passed by him to the bank. There was evidence by expert witnesses, and those acquainted with the handwriting of the appellee, tending to show that the indorsement on the draft was in the handwriting of the appellee.

There was no testimony of admissions made by the appellee concerning the indorsement of the draft, nor was she asked about any statements made by her in reference thereto, either on the trial or in her examination, taken before the trial. Shortly after the return of the verdict, the appellant incidentally discovered that one Clark H. Hadley, a competent witness residing in the city of Richmond, where the trial was had, would testify that soon after the plaintiff came to Richmond, and shortly after the draft was sold to the bank, she applied to the said Hadley for a loan of money, on pledge of certain collaterals, and stated to said Hadley, amongst other things, that she had given said draft to her husband for collection, and that he had collected it and gone off with another woman, as she believed, and that she wished to borrow money to go in search of him. The affidavit of the cashier of the bank, who had charge of the case, and of the witness Hadley, is filed in support of this cause. It appears from these affidavits that, after the commencement of the action, the appellant sent its agent to Rushville, Indiana, and to Hamilton, Ohio, where the appellee and her husband formerly lived. At Rushville, the agent made inquiry of Mr. and Mrs. Musselman, with whom the appellee and her husband boarded while in Rushville, and of the officers of the bank in Hamilton, Ohio, and of all persons at each of said places, who would be likely to know anything about appellee and her hus-

band, or anything concerning said draft, and also made diligent inquiry at the city of Richmond, of all persons whom it had reason to suppose had any knowledge of the appellee or her husband concerning said draft, or had any dealings with or conversation with appellee, and that appellant was wholly unable to find any evidence or any admissions or statements of the appellee, that she had given the draft to her husband for collection, or any other person, or had consented to his taking and using said draft; that the appellant, its officers and counsel, had no knowledge, or means of knowledge, of the fact that appellee had any dealings with, or conversation with, the said Hadley, or had made any admissions or statements to him, and that there was nothing whatever to suggest the making of any inquiry of him; that it had no knowledge or information whatever, until after the return of the verdict in the cause, as to any fact known by the said Hadley, and that said Hadley was not a witness in said°cause; that the first information that the appellant received that said Hadley knew or would testify to any of said facts was on June 16th, 1892, and after the verdict was returned in said cause, and that such information came to it through a third person who had heard the said Hadley make a statement of such facts since the trial.

It further appeared, by the affidavit of Hadley, that he did not communicate the conversation had with the appellee, or any part thereof, to any person whatever, until after the verdict had been rendered in said cause; that he had no knowledge that any such suit had been commenced, or was pending, until Wednesday morning, June 15th, 1892, when he was at the courthouse as a witness in another case, and that while there the argument in said cause was being made, and that he heard a part of the argument, and then recollected and called to mind

the interview and conversation he had with the appellee. The appellee filed counter affidavits in denial of the facts stated in Hadley's said affidavit and on the question of diligence. She also filed a number of affidavits made by various persons tending to show that the said Hadley had made statements to other persons at different times and places contradictory of the statement contained in his affidavit concerning said conversation. The appellant moved the court to strike out and reject the counter affidavits not bearing on the question of diligence. This motion was overruled, and proper exceptions taken. Afterwards, and by leave of the court, the appellant filed several additional affidavits in support of its motion. Appellant's contention is that counter affidavits can not be heard on a motion for a new trial, on account of newly discovered evidence, except as to the question of diligence.

It is asserted, with much confidence, that, in this State, and under our code of practice, there is nothing to warrant the reception of counter affidavits denying the truth of the material facts stated by the newly discovered witness, or as to the credibility of such witness, or as to any matter which would have to be determined by the jury in another trial of the case.

The identical question here presented has not, to our knowledge, received an adjudication in this State; although there are cases which seem to indicate that such affidavits may be received, not only on the question of diligence, but as to the truth of the matter stated by the newly discovered witness. *De Hart* v. *Aper*, 107 Ind. 460; *New Castle, etc., R. R. Co.* v. *Chambers*, 6 Ind. 346; *Harris* v. *Rupel*, 14 Ind. 209 (212).

These cases recognize the practice, but as no objection was made to the counter affidavits, the question is not directly decided. There are other authorities which seem-

ingly indicate that the counter affidavits must be limited to the question of diligence. *Westbrook* v. *Aultman, Miller & Co.*, 3 Ind. App. 83; *Zeller* v. *Griffith*, 89 Ind. 80.

Looking into the decisions of 'other States, we find that in the early case of *Pomroy* v. *Columbian Ins. Co.*, 2 Caines (N. Y.), 260, it was held that in an application for a new trial on account of newly discovered evidence, if the information be stated to have been given by a person of character and reputation, counter affidavits to show that such person was unworthy of belief might be read. The force of this decision is, however, weakened by the dissenting opinion of SPENCER, J.

To the same effect is the decision in the case of *Parker* v. *Hardy*, 24 Pick. 246.

In 3 Graham and Waterman on New Trials, p. 1069, after citing and commenting upon the case of *Parker* v. *Hardy*, *supra*, it is said: "This practice has prevailed, and been found to be convenient and useful in other States."

In the following cases, to wit: *People, ex rel.*, v. *Superior Court, etc.*, 10 Wend. 288; *Ames* v. *Howard*, 1 Sumner (U. S.), 482; *Williams* v. *Baldwin*, 18 Johns. 489; *Coast Line, R. Co.* v. *Boston*, 9 S. E. Rep. 1108; *Thompson* v. *Thompson*, 25 Pac. Rep. 962; the practice of receiving and considering counter affidavits as to the truth of the statements of the newly discovered witnesses is recognized and acted upon by the various courts, although the question of the right to consider them was not raised. But, in the case of *Finch* v. *Green*, 16 Minn. 355, the question was squarely presented and decided.

There was, in that case, a showing made that since the trial one Williamson knew certain facts essential and material to the defense, and not proved at the trial, accompanied by an affidavit of Williamson disclosing

such facts. Upon the hearing of the motion for a new trial, the plaintiff offered counter affidavits contradicting the important statements of Williamson's affidavit. The defendant objected to the reception of the counter affidavits. The court overruled the objection, received and considered the affidavits, and denied the motion. The court, in passing on the question, said: "The counter affidavits offered by the plaintiff were properly received. The application, which is addressed to the sound discretion of the court, is based upon the ground that there has not been a fair trial upon the real merits, and for this reason it is proposed to compel a party, who has once litigated the matter in controversy, to litigate it a second time. Why should not such party be permitted to produce counter affidavits for the purpose of showing that the alleged ground for a new trial had no existence? We think no good reason can be given why he should be concluded by the *ex parte* affidavits of the moving party, nor do we understand such to be the practice."

The authorities seem to sustain the position of the appellee, that the counter affidavits were properly received.

Appellant's learned counsel say: "Judicial controversies between parties ought always to be determined according to the real facts, and upon the fullest possible presentation of the facts, and the whole spirit of our code is that the amplest opportunities shall be afforded for such presentation. Then, too, one of the most sacred rights under our institution is the right of a party to demand that the facts of his case shall be passed upon and determined by a jury of his peers. · If a party has been, without his fault, deprived of important and material evidence upon a trial, he has suffered, to that extent, a miscarriage of justice, and the law, in such case, recognizes his right to have another opportunity to present the entire facts to another jury, whose exclusive province

will be to determine as to the credibility of the witnesses, the weight to be given to their testimony, and the facts established by the testimony. Of this right he is deprived, if the court can assume to receive and consider counter affidavits as to such matters, and to determine therefrom, in advance, the very things which belong to the exclusive province of the jury, thus shutting the door to investigation by a jury. Besides thus working wrong and injustice, the practice of receiving counter affidavits as to such matters, obviously tends to divers abuses, which ought to be guarded against. One of these is somewhat illustrated, in the present case, by the fact that the alleged maker of one of the so-called counter affidavits afterwards testified, under oath, that he never made or swore to the statement therein contained.''

Conceding the force of this argument, yet it is undeniably true that there are many facts in judicial controversies which a party is not entitled to have submitted to a jury of his peers. If the fact is one that falls within the sphere of equitable cognizance, he must submit it to the court for determination. Again, in many cases, after a verdict has been returned, the trial court has supervisory powers over it, and if it is not right in its judgment, it is its duty to set it aside even on its own motion. We do not think any extraordinary hardship is imposed upon the unsuccessful party by the practice of admitting counter affidavits as was done in this case. The newly discovered evidence was relevant and material; not cumulative and impeaching merely in its character, but is of that kind that would entitle the appellant to a new trial if uncontradicted and presented under a proper showing of diligence. *Rains* v. *Ballow*, 54 Ind. 79; *Houston* v. *Bruner*, 39 Ind. 376; *Kochel* v. *Bartlett*, 88 Ind. 237.

Upon examining the affidavits pro and con with refer-

ence to whether or not a new trial would produce a different result from the first trial, we find the evidence to be conflicting, and we do not feel at liberty to disturb the ruling of the trial court on said motion. This conclusion renders it unnecessary for us to pass upon the question of diligence.

The last contention of appellant is that the court erred in giving and refusing certain instructions. We have given the instructions a careful examination and consideration in connection with the issues and the evidence, and are satisfied that no error exists that entitles the appellant to a new trial.

Judgment affirmed, at the costs of the appellant.

Filed Oct. 19, 1893.