## THE HAMMOND, WHITING AND EAST CHICAGO ELECTRIC RAILWAY COMPANY *v.* SPYZCHALSKI.

[No. 2,057.   Filed February 2, 1897.]

STREET RAILWAYS.—*Collision With Locomotive at Crossing.—Complaint.*—In an action against an electric street railway company, by a passenger, for personal injuries sustained by reason of a collision of the electric car with a locomotive at a crossing, it is not necessary to allege that the electric railway was located on a public highway and that those in charge of the locomotive had given the proper signals designating an intention to cross the highway, where it is alleged that neither the locomotive nor the electric car gave any signal of its approach to the crossing, and that those in charge of the electric car saw the locomotive approaching and knew that it would reach the crossing at the same time with the electric car. *pp. 11, 12.*

CARRIERS.—*Passenger.*—Common carriers are required to exercise the highest degree of care, diligence, vigilance and skill in the transportation of passengers.   *p. 12.*

SPECIAL VERDICT.—*Court May Modify Interrogatories.—Statute Construed.*—Under the Act of March 11, 1895, providing as to the form and manner of preparation of a special verdict, it is within the power of the court to modify interrogatories prepared by counsel, or to frame new ones, if those prepared by counsel are not so framed as to be readily understood by the jury, or if they might, in the opinion of the court, fail to elicit from the jury material facts. *p. 14.*

EVIDENCE.—*Proper Admission Of in Rebuttal.*—Where on the trial of an action against an electric railway company for personal injuries sustained by plaintiff in a collision of an electric car with a locomotive at a crossing, the motorman in charge of the defendant's car at the time of the collision testified as a witness for defendant that there was between him and the approaching locomotive a watchman's shanty, testimony that the shanty did not obstruct the motorman's view was properly admitted in rebuttal.   *pp. 14–16.*

SAME.—*Rebuttal.*—Where in an action for personal injuries resulting in a miscarriage, the plaintiff's physician testified only as to plaintiff's general physical condition, and a medical witness for defense testified as to certain physical conditions which would tend to produce the miscarriage, it was proper to permit plaintiff's physician

The Hammond, Whiting, etc., Railway Company *v.* Spyzchalski.

to testify on rebuttal, to the effect, that the physical conditions mentioned by defendant's witness did not produce the injury complained of. *p. 16.*

NEW TRIAL.—*Newly Discovered Evidence.—Affidavit in Support of Motion.—Counter-Affidavits, Scope Of.*—Where a motion is made for a new trial on the ground of newly discovered evidence, and is supported by affidavits, counter-affidavits may be filed questioning the credibility of the alleged newly discovered evidence. *pp. 16–20.*

PRACTICE.—*Indefinite Answers to Interrogatories by Jury.—Instructions.*—Where the evidence will warrant definite and specific answers to interrogatories submitted to the jury, and after deliberation the jury returns into court with indefinite answers, it is not error for the court to instruct the jury in relation to answering the interrogatories, and to send it back to the jury-room for further deliberation. *pp. 19, 20.*

APPEAL AND ERROR.—*Evidence.—Question Calling for a Mere Conclusion of Witness.*—Where on the trial of an action against an electric railway company for personal injuries sustained by plaintiff in a collision with a locomotive, a witness having testified that after the collision the conductor of defendant company took the names of the passengers, and asked if any one was hurt, it was not error to exclude the further question, as to whether "this inquiry was made loud enough for all to hear," as such question called for a mere conclusion of the witness. *pp. 20, 21.*

SAME.—*Evidence.*—On the issue as to negligence resulting in a collision between an electric car and a locomotive, it is not error to exclude the testimony of the conductor as to the instructions given him by the company as to his duties in exercising care at railroad crossings. *p. 21.*

SAME.—*Evidence.*—On the issue as to negligence resulting in a collision between an electric car and a locomotive, where it had been shown that the motorman and conductor had been discharged after the collision, it was not error to exclude the testimony of an official of the defendant electric railway company to the effect that he had no knowledge of plaintiff's injuries for three months after the men were discharged. *p. 21.*

From the Porter Circuit Court. *Affirmed.*

*Walter Olds* and *Charles F. Griffin,* for appellant.

*Agnew & Kelly* and *H. A. Wambold,* for appellee.

COMSTOCK, C. J.—This action was originally brought by appellee, Agnes Spyzchalski, against the

appellant, The Hammond, Whiting and East Chicago Electric Railway Company and the Chicago and Calumet Terminal Railway Company, for damages resulting from an injury alleged to have been sustained by reason of the negligence of both the defendant companies, resulting in a collision at a crossing in Lake county, Indiana, and by reason of which appellee was injured.

At the conclusion of her testimony in the trial of the cause appellee dismissed the action as against the Chicago and Calumet Railway Company and trial was continued against appellant. A special verdict was returned in which appellee's damages were assessed at $3,000, and judgment in her favor was rendered for that amount.

Appellant assigns the following errors:

"1.—Complaint does not state facts sufficient to constitute a cause of action.

2.—The court erred in overruling appellant's demurrer to complaint.

3.—Court erred in allowing appellee to file counter-affidavits to appellant's motion for a new trial.

4.—Court erred in overruling appellant's motion for judgment on answers of the jury to interrogatories.

5.—The court erred in rendering judgment for appellee on special verdict.

6.—The court erred in submitting interrogatories, drawn by itself, to the jury, on its own motion.

7.—The court erred in overruling appellant's motion for a new trial."

We will consider the errors assigned in the order in which they are discussed in appellant's brief.

1.—The court erred in overruling demurrer to complaint.

The complaint, as has been stated, is against both companies. It alleges that said railways cross each other at a point of intersection near Whiting; that the

steam engines cross, and trains of the Chicago & Cal-
umet Terminal Railway Company pass and repass, and
the electric cars of the Hammond, Whiting and East
Chicago Electric Railway Company cross the tracks
of the said defendant, the Chicago and Calumet Ter-
minal Railway Company at said point; that they have
owned and operated said railways for two years last
past continually; that on the 28th of October, 1894,
appellee was a passenger on a car of appellant, run by
electricity; that she had paid her fare and defendant
had agreed to carry her as such passenger safely, etc.;
that while said electric car was being propelled along
the railway of the said Hammond, Whiting and East
Chicago Railway Company and under its control,
toward the railway of the Chicago and Calumet Ter-
minal Railway Company, and in plain view of the
tracks of both defendants at the point of crossing, for
a half mile each way from the point of crossing, a
steam engine of defendant, the Chicago and Calumet
Railway Company, approached said crossing on the
tracks of the Chicago and Calumet Railway Company,
under its management and control, both said car and
engine being in full view of each other; that neither
of said defendants made any effort to stop or check
either the said electric car or steam engine and wholly
failed to give any signal of the approach to the cross-
ing of said engine and electric car, but negligently
ran said engine and electric car to said point of cross-
ing, reaching the same at the same time; that both de-
fendants knew that said car and engine would reach
said crossing at the same time; that as a consequence
of said negligence said engine and car collided at said
crossing, the car being thrown from the track and
turned over, the plaintiff being thrown against the car
and on the ground with great violence by reason of
which she sustained great internal and external inju-

ries; that she was at the time pregnant with child; that she was injured about the hips, abdomen, bowels and stomach, and as a consequence of such injuries she suffered a miscarriage resulting in the death of her unborn child, etc.

Appellant contends that as it is shown by the evidence that the electric railway was located upon a public highway the complaint should have averred that fact; that while the Chicago and Calumet Terminal Railway Company had perhaps a superior right to cross the highway, and it was the duty of the street railway to have stopped and allowed it to have crossed, had it known it was going to do so, yet the Chicago and Calumet Railway Company had no right to cross the tracks of the street railway upon a public highway without giving the signals required by statute, it being its duty at the distance of not less than eighty nor more than one hundred rods previous to crossing the highway upon which the street railway's lines were located to sound the whistle and continuously ring the bell of the locomotive from that point until it crosses the highway where the tracks were located; that the appellant had the right to rely upon the Chicago and Calumet Terminal Railway Company stopping its train of cars before it reached the highway, unless it had given the proper signals as required by statute; that it should have averred that appellant's electric railway was located upon a public highway and that the Chicago and Calumet Terminal Railway Company had given proper signals designating its intention to cross the highway; that otherwise it shows no fault upon part of appellant.

Counsel content themselves with the statement of the proposition, no authority is cited, no argument made. The complaint avers that neither the steam engine nor electric car gave any signal of its ap-

proach to the crossing; that those in charge of the electric car saw the steam engine approaching and knew that it would reach the crossing at the same time with the electric car.' In the opinion of the court there was due appellee from appellant a degree of care which did not authorize appellant, under the circumstances alleged, to indulge a presumption at the risk of the lives of its passengers.

As between the two companies, each would have the right to presume that the other would comply with the law, but the controversy here is not between them. The negligent conduct of the steam railway company could not excuse the negligence of appellant in running its car in the way of the engine. Appellant owed to its passengers, under the circumstances, the highest degree of care.

In this case it may, as it was properly said in *Prothero* v. *Citizens' Street R. W. Co.*, 134 Ind. 431, Judge Olds speaking for the court, "In relation to the general transportation of passengers when danger is constantly apparent, common carriers of passengers are required to exercise the highest degree of care, diligence, vigilance and skill." Citing Beach on Contributory Negligence, 2d ed., section 44; *Louisville, etc., R. W. Co.* v. *Snyder*, 117 Ind. 435; *Louisville, etc., R. W. Co.* v. *Lucas*, 119 Ind. 583; *Pennsylvania Co.* v. *Marion*, 123 Ind. 415.

Appellant next questions the right of the court to change or alter interrogatories submitted by a party, under the practice requiring a special verdict, and the right of the court to submit interrogatories on its own motion as a part of the special verdict.

In this case the court, on its own motion, prepared and submitted twenty-four interrogatories, to which action of the court the defendant at the time ex-

cepted, and the action of the court is assigned as a cause for a new trial.

This question requires a construction of the statute under which special verdicts are authorized. Counsel for appellant claim that the authority of the court is limited to the modification of such interrogatories as are manifestly improper, when presented by counsel. Counsel further submit that the court erred in changing interrogatories submitted by the defendant; that when the court frames questions to be propounded to the jury "it oversteps its authority and enters the forum of the practitioner."

Counsel cite three interrogatories, modified by the court by striking out of each one the negative "not" which was immediately preceded by the auxiliary "was." For further illustration of this exception we give one of the interrogatories in which it is claimed the error was committed, viz.: "Is it not a fact that it did not exceed one minute from the time the street car stopped, west of the tracks, until it advanced and the collision took place?" The omission of the word "not" where it first occurs in this interrogatory is the alleged error. The answer to each of these interrogatories was "Yes." With "not" in, the answer would have been the same; the change by the court did not mislead or confuse the jury. Apart from the right of the court to erase any unnecessary word from an interrogatory, appellant was not in any way harmed. It is not contended by counsel that the answers to these interrogatories thus changed by the court were not true to the evidence.

The act of March 11, 1895 (Acts 1895, p. 248; section 546, Horner's R. S. 1896), provides that "such special verdict shall be prepared by the counsel on either side of such cause and submitted to the court, and be subject to change and modifications of the court." Coun-

sel admit that the court may, under the statute, modify interrogatories, but contend that only those can be changed that are improper. A modification of an interrogatory which abridges and simplifies it without tending to confuse the jury is, we think, clearly in the power of the court.

It is recognized as true that attorneys represent only their respective clients and that interrogatories prepared by them are generally only intended to elicit answers consistent with, and tending to support their respective theories of the case. It is the duty of the trial court to see that the questions are so framed as to be readily understood by the jury and to elicit the truth without reference to the effect upon the interests of either of the parties litigant.

The court has power to determine whether an interrogatory be properly framed. *Nichols, Admr.,* v. *State, ex rel.,* 65 Ind. 512.

Such modifications as are contemplated by the statute may involve the framing of a number of interrogatories. If the interrogatories prepared by counsel might, in the opinion of the court, fail to elicit material facts it would be the duty as well as the right of the court to frame additional ones. We think this is clearly the meaning of the statute.

Appellant's counsel also claim as error the action of the court in admitting the testimony of witnesses Reynolds, Curry, Funkhauser, Murphy, Crone and Snively, for appellee, after she had closed her original case and dismissed as to the Chicago and Calumet Railway Company, and the defendant, the Street Railway, had introduced its evidence and rested. The objection made is that it was not properly rebutting; that it was a part of appellee's original case.

The testimony of these witnesses was material and it is admitted by appellant's counsel that the court

might have exercised its discretion in permitting plaintiff to introduce this class of evidence out of its order, upon the ground of discretion, allowing appellant an opportunity of rebutting it. Citing "it is within the sound discretion of the court to admit evidence to sustain the action in chief, after the defendant has closed his defense, when the defendant still has an opportunity to contradict it; and such discretion would have to be greatly strained before it would become ground to reverse the judgment." *Carter* v. *Zenblin, Admr.*, 68 Ind. 436; *Sharp* v. *Radebaugh*, 70 Ind. 547.

George Little, motorman for appellant, in charge of the car at the time of the accident, testified, as a witness for appellant, that there was to his left, between him and the approaching train, a small watchman's shanty. No one had spoken of this shanty, on the part of appellee, except a Mr. Turner, who had testified as to the location of the watchman's house in connection with a plat intended to show the jury the tracks and surroundings. The evident purpose of the motorman's testimony was to show that the shanty obstructed his view of the approaching train. The testimony of Reynolds, Curry, Shirts, Funkhauser and Murphy was intended to show that the motorman could see the approaching train from the point where he stood before his car started, for the reason that the shanty was not between him and the approaching train. For this reason it was rebuttal..

Besides, the record shows that the court stated in admitting this testimony of Reynolds, "I think as a matter of discretion I will hear the witness with regard to the question as to the whereabouts of the shanty."

The record does not disclose that appellant made any offer to introduce testimony to rebut the testi-

mony of these witnesses.   It cannot, therefore, be said that the right was denied.

Appellant claims as error the permitting of Dr. F. G. Ketchem to testify in rebuttal, after he had testified as to the injuries of plaintiff for appellee in chief; that he was permitted in his re-examination and rebuttal over the objection of appellant to give his opinion as to additional injuries from which it was contended plaintiff was suffering.   It is shown by the record that Dr. Ketchem testified, when first upon the stand, that he had examined plaintiff and stated her general condition.   Appellant called Dr. David J. Loving, who testified that there was laceration of the neck of the womb, occasioned by child birth, and that the womb was enlarged and inflamed and catarrhal, and that such laceration might tend to abortion.   Dr. Ketchem was then called in rebuttal to testify upon the subject of the laceration which was mentioned by Dr. Loving, who testified as to the laceration, its probable effects and the time of its occurrence, for the purpose of showing that it was not the laceration which produced the abortion of which plaintiff complained.

The laceration, its cause and effect was first mentioned by Dr. Loving, and it was proper to rebut his medical opinion.

The next alleged error is the overruling of the motion for a new trial, on the ground of newly discovered evidence.

Affidavits are filed to show that after the trial the appellant discovered evidence that appellee was, prior to the 28th of October, 1894, not a strong, healthy woman, but an invalid and subject to miscarriages. Representatives of appellant attempt in these affidavits to show diligence made unavailing to obtain information before the trial, owing to the adverse conditions under which they prosecuted their inquiries.

The Hammond, Whiting, etc., Railway Company *v.* Spyzchalski.

Appellee, upon the trial, testified that she had been a strong, healthy woman; that she was married to her present husband in 1885; that between that time and 1893 she had borne him four strong and healthy children; that she was pregnant at the time of the accident. Appellee, in answer to affidavits filed by appellant, presented the affidavit of herself and husband, and the affidavits of nine other persons, her neighbors and acquaintances for years, all concur that prior to the accident appellee was a healthy woman. The fact that she was delivered of four healthy children within eight years and was pregnant with a fifth at the time of the accident is a sufficient refutation of the statement that she was subject to miscarriages. So, without passing upon the question of whether due diligence was shown by appellant in seeking information before trial, we think, the newly discovered evidence is fully met by the counter-affidavits. Counsel for appellant contend that counter-affidavits were not admissible to controvert any facts except those relating to the question of diligence. The latest expression of the court upon this subject is found in *First Nat. Bank, etc.,* v. *Gibbons,* 7 Ind. App. 629, and is decisive of the question.

The decision is important, as it is the first expression upon the subject, where the question was squarely presented to either the Supreme or Appellate Court of this State. Prior to the decision of *First Nat. Bank, etc.,* v. *Gibbons, supra,* there were reported cases in this State which seemed to indicate that counter-affidavits might be received as to the truth of the matter stated to be newly discovered evidence. *DeHart* v. *Aper,* 107 Ind. 460; *New Castle, etc., R. R. Co.* v. *Chambers,* 6 Ind. 346; *Harris* v. *Rupel,* 14 Ind. 209.

These cases, however, only recognize the practice,
VOL. 17—2

no objection having been made to the counter-affidavits.

Also, in *People, ex rel.,* v. *Superior Court, etc.,* 10 Wend. 286; *Ames* v. *Howard,* 1 Sumner (U. S.) 482; *Williams* v. *Baldwin,* 18 Johns. 489; *Coast Line R. R. Co.* v. *Boston,* 83 Ga. 387, 9 S. E. 1108; *Thompson* v. *Thompson,* 88 Cal. 110, 25 Pac. 962, the practice of receiving counter-affidavits as to the truth of the statements of the newly discovered witnesses is recognized, although the right to consider them was not raised.

In *Finch* v. *Green,* 16 Minn. 355, the question was squarely presented and decided, the court holding that it was proper to receive counter-affidavits for the purpose of showing that the alleged ground for a new trial had no existence.

In *First Nat. Bank, etc.,* v. *Gibbons, supra,* counsel for appellant contended, as do the counsel for appellant in the case at bar, that judicial controversies ought to be determined upon the fullest presentation of facts; that one of the most sacred rights under our law is the right of the party to demand that the facts of his case shall be passed upon and determined by a jury of his peers. If a party, without his fault, has been deprived of important and material evidence upon a trial, he should have another opportunity to present the entire facts to another jury, whose exclusive province it would be to determine as to the credibility of the witnesses and the weight to be given to their testimony and the facts established by the testimony. That if the court assumes to consider counter-affidavits as to such matters it determines in advance the very things which belong to the exclusive province of the jury.

The court conceded the force of the argument, but held that the counter-affidavits were properly re-

ceived, stating that, "it is undeniably true that there are many facts in judicial controversies which a party is not entitled to have submitted to a jury," and that, in the opinion of the court, no "extraordinary hardship is imposed upon the unsuccessful party by the practice of admitting counter-affidavits as was done in this case." *Thornburg, Admr.,* v. *Buck,* 13 Ind. App. 446. The case of *First Nat. Bank, etc.,* v. *Gibbons, supra,* is cited and approved upon the same proposition.

It is clearly shown by the evidence that appellee was bruised and injured about the breast and abdomen; that she was that day taken sick, and was sick for three weeks with symptoms of abortion, at which time the miscarriage occurred.

The court does not feel justified, in view of the statements pro and con in the affidavits, to disturb the ruling of the trial court on said motion. Newly discovered evidence, to warrant the granting of a new trial, should be of such a decisive character as to render it reasonably certain that another trial would bring about a different result. *Morrison* v. *Carey,* 129 Ind. 277.

After the jury had retired and deliberated twenty-four hours, they returned into court with answers to the interrogatories, and the court having examined them, gave the jury instructions directing them in relation to answering certain of the interrogatories; after these instructions were given, the jury again retired.

One of the interrogatories in question, No. 32, was as follows: "Did the mortorman in charge of the street car of the defendant, which collided with the car on the track of the Chicago & Calumet Terminal Railway Company, look and listen for approaching trains before proceeding to move his car forward across the tracks of the Chicago & Calumet Terminal Railway

Company at said point?" To which the jury answered, "There is no evidence that he did look or listen." ·

When the jury finally returned to the court, their answer to this interrogatory was "No." ·

Interrogatory No. 17 is as follows: "If you find the fact to be that the mortorman might have looked at that train and thereby avoided the collision, state whether he did look at that point?" Their answer was, "There is no evidence that he did look." After the instruction their answer to this question was "No." ··

Counsel for appellant objected to the directions given the jury as to these interrogatories. We think · the objection was not well taken. It is the duty of the court, expressed in numerous decisions of the Supreme Court, to require a jury to give definite and specific answers to interrogatories, when the evidence will warrant it. That the evidence did warrant it in this case is made apparent by the direct answers. *Peters* v. *Lane,* 55 Ind. 391; *Carpenter* v. *Galloway,* 73 Ind. 418; *Pittsburgh, etc., R. W. Co.* v. *Hixon,* 110 Ind. 225; *Cleveland, etc., R. W. Co.* v. *Asbury,* 120 Ind. 289.

Counsel object, too, that the instructions as to these interrogatories were not given in writing. The record does not show that there was a request that the instructions should be in writing.

A Mr. Turner testified as a witness in behalf of the defendant. He was asked, "what is the fact as to any inquiry after you arrived there as to any person being hurt?" And the witness answered, "The conductor came around taking the names of the people and asked if there was any one hurt. I believe the conductor of the railroad train did the same thing. The witness was then asked, "Was this inquiry made loud enough for all the people to hear it?" To which appellee objected, and the court sustained the objection, and

appellant excepted. There was no error in this ruling. The question called for a mere conclusion of the witness. It was for the witness to describe the circumstances and the tone of voice in which the question was asked, and for the jury to determine whether appellee had heard. Appellant also excepted to the ruling of the court in refusing to allow one Frank Crone, conductor on the electric car, who testified as a witness in behalf of appellant, to testify as to the instructions given him by the appellant as to his duties in exercising care at railroad crossings. There was no error in this. Instructions to the agent or employe to be cautious and diligent would not excuse negligence if the agent disregarded the instructions.

Finally, it is contended that in as much as it was shown, upon cross-examination of the motorman and conductor, that they were discharged from the employment of the street railway company, appellant should have been permitted to prove by A. M. Turner that at the time, and three months after he discharged them, he had no knowledge that any person had been hurt by the collision, except a Mrs. Jullier.

If the plaintiff was injured, as alleged in her complaint, and as the jury have found that she was, whether these employes were discharged because their negligence may have contributed to the injury of one passenger or of many could not affect the rights of plaintiff.

We have carefully examined the record and read with profit the able and instructive briefs of counsel. We concede the force and ingenuity of the argument in support of the appeal, but we have found no error entitling the appellant to a new trial.

Judgment affirmed.