## BROWN *v.* THE STATE.

1. After one accused of crime has been convicted, and has made a motion for a new trial, and the judgment denying it has been affirmed by this court, when an extraordinary motion for a new trial is made, based on the ground of newly discovered evidence, it should be made to appear that such evidence is so material that it would probably produce a different verdict.

(*a*) An extraordinary motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge, and a refusal to grant it will not be reversed unless such discretion is abused.

2. On the hearing of such a motion, the court may hear affidavits making a counter-showing on behalf of the State, so as to go to the bottom of the showing and discover, if possible, how much of real substance and merit there is in the alleged new evidence.

(*a*) The statute does not require that, in order for the affidavits of the rebutting witnesses on behalf of the State to be admitted, there must also be affidavits as to their residence, character, credibility, etc.

(*b*) There is no requirement of law that such rebutting affidavits shall be served on the movant or his counsel. The court, in his discretion, may so direct the hearing that no injustice may be done by reason of surprise.

(*c*) There was no error in this case in overruling the motion for a new trial.

JUNE 10, 1914.

Indictment for murder. Before Judge Conyers. Glynn superior court. March 21, 1914.

Dan Brown was indicted for the murder of James Williams. On the trial the evidence tended to show the following, among other things: The defendant had maintained illicit relations with one Susan Hopkins. On February 12, 1911, he married. Thereafter Williams succeeded him as the paramour of Susan Hopkins. Later the accused sought to renew his relations with the woman, but she refused to permit it. He inquired as to who was associating with her, and she declined to tell him. He said that he knew she was going with somebody, that if she did not go with him she could not go with anybody, and that he would kill her if she did not go with him. This occurred about three weeks before the homicide. On the night of the killing Williams went to the house of the woman and remained with her about an hour or an hour and a half. While he was there the accused came to the front door and knocked. The woman went to the door, and the accused asked her to come out on the front porch, which she declined to do. He said that if

she did not do so she would be sorry for it. She slammed the door and locked it. After this she heard a noise under the house, but thought it was a neighbor's goat. In about ten or fifteen minutes Williams started to leave. After the door was opened he stood in it for a few minutes. Some one, standing about twenty-five or thirty feet away, fired a weapon, killing Williams. Susan Hopkins testified that she did not know who the man was, but he looked to her like the accused. There was also evidence of incriminatory statements or confessions made by the accused, and other evidence unnecessary to state in detail. The jury found the accused guilty. A new trial was refused, and the case was brought to this court by writ of error. The judgment was affirmed. 141 *Ga.* 5 (80 S. E. 320). After this the accused made an extraordinary motion for a new trial, to which an amendment was subsequently made. It was based on the newly discovered evidence of three witnesses: (1) One Pinkney Taylor made an affidavit to the effect, that a colored man by the name of Will Symmons, with whom she was well acquainted, went to her house a little after midnight on the night of the homicide, knocked at her door, and asked her to give him a box of matches; that he had a gun in his hand, and when she asked him why he had it, he stated that he had shot Williams at the house of Susan Hopkins; and that he asked her to lend him a little money in order that he might get away from the officers, as he was going to leave the place. (2) One Lula Flowers made an affidavit to the effect, that Will Symmons had been renting a room from the deponent for about thirty days before the homicide and had been living there; that he had often spoken to her with reference to Susan Hopkins as being his best friend; that about six o'clock on the evening of the homicide he left her house and stated that he was going to the house of Susan Hopkins; that about half past twelve o'clock that night he went to the house of the affiant, carrying a shotgun, and tried to borrow money from her; that he was in an excited condition; that he stated that he had had some trouble with a man named Jim, who had tried to run over him at the house of the Hopkins woman, and he needed some money; that he offered to leave the gun on deposit with her for two dollars; and that he only remained at her house a short time, saying as he left that he was going to New York. (3) One Eliza Harden made an affidavit to the effect, that immediately prior to the homicide it

was common talk among the people that Will Symmons, a colored man, was visiting Susan Hopkins; that while Susan Hopkins and Dan Brown were in jail shortly after the homicide, but before the committing trial, Selina Williams, the mother of the deceased, in talking with the affiant, said, that, before the killing of her son, he and Will Symmons had had a "fracas" at the house of Susan Hopkins, and that she (Selina) had told him not to take his meals over at the house of Susan Hopkins. There were also affidavits for the purpose of showing the credibility of these witnesses, and that the new evidence only came to the knowledge of the accused and his counsel after his conviction, and without laches on their part.

On behalf of the State affidavits in rebuttal were introduced. Lula Flowers repudiated the statement of facts contained in her former affidavit, and testified that it was procured from her by fraud and a pretense that she was signing a paper of an entirely different character. Susan Hopkins made an affidavit, that she knew only one man bearing the name of Will Symmons; that she had not seen him for about a year before the homicide; that she had no knowledge of his being anywhere about her house on the night of the killing; that he had nothing to do with it; and that he and Williams never had a difficulty at her house at any time. Selina Williams made an affidavit to the effect, that she did not know any person named Eliza Harden; that at no time did she ever make a statement to the effect that her son had a difficulty at the house of Susan Hopkins prior to the killing, or that she told her son not to take his meals there; that no such occurrence took place; and that she never saw Will Symmons.

There were some other affidavits, which it is unnecessary to mention in detail. The presiding judge overruled the motion, and the movant excepted.

*Robert W. Durden* and *Francis H. Harris*, for plaintiff in error.
*Warren Grice, attorney-general, J. H. Thomas, solicitor-general,* and *J. T. Colson*, contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. In *Young* v. *State*, 56 *Ga.* 403, Bleckley, J., said (p. 405): "It was early ruled by this court that newly discovered evidence was not a favored ground for new trial: 10 Georgia Reports, 512; 12 Ibid. 500. If this ground was not favored then, how watchful

of it should we be now? The incentives to caution have been multiplied within a few years past, tenfold, perhaps a hundredfold. From causes that have become history, and that are known to us all, the value of affidavits taken promiscuously has come to be low indeed. Only the most credulous of men would habitually regard the contents of such affidavits as sufficient to overcome the verdict of a jury. And unless it is reasonably apparent to the judicial mind that the new facts would probably produce a different verdict, a new trial should not be ordered. 10 Georgia Reports, 512." See *Burge* v. *State,* 133 *Ga.* 431 (66 S. E. 243). Applications for new trials upon the ground of newly discovered evidence are addressed to the sound discretion of the trial judge, and a refusal to grant a new trial on that ground will not be reversed unless his discretion is abused. *Miller* v. *State,* 119 *Ga.* 561 (46 S. E. 838); *Bradford* v. *Brand,* 132 *Ga.* 642 (64 S. E. 688). These rulings were made in cases where newly discovered evidence was made the ground of a first motion for a new trial, and made in due time after the verdict. The rules announced apply with even greater force where one accused of crime has been regularly tried and convicted, and has made a motion for a new trial and failed to obtain it, and where the judgment has been affirmed by this court. The general rule requires that every application for a new trial shall be made at the term at which the trial was had, and, when the term continues longer than thirty days, that it shall be filed within thirty days from the trial. The exception allowed is "in extraordinary cases." Civil Code (1910), § 6089. By section 6092 it is declared, that, whenever in any criminal case a motion for a new trial shall have been made at the term of the trial and overruled, or when a motion for a new trial has not been made at such term, in either event no motion for a new trial from the same verdict shall ever be made or received, "unless the same be an extraordinary motion or case, such as is provided for in section 6089 of this Code," and that only one extraordinary motion can be made.

In *Malone* v. *Hopkins,* 49 *Ga.* 221, Warner, C. J., said (p. 227): "To entitle the defendant to make a second motion for a new trial, after he has once been heard, will require such an extraordinary statement of facts, according to the repeated rulings of this court, as would probably produce a different result if a new trial should be granted; and the extraordinary statement of facts relied on to

produce that result must have been unknown to the defendant, or his counsel, at the time of the first motion, and could not have been ascertained by them in the exercise of proper diligence for that purpose." And, after referring to the facts of the case then under consideration, he added: "The *certainty* of punishment of those who violate the criminal laws of the State is the only preventive of crime."

In *Cox* v. *Hillyer*, 65 *Ga.* 57, the same eminent chief justice, in considering the expression "an extraordinary motion or case," as used in the code section above cited (which was contained in the code then in force, under another number), said: "The extraordinary motions or cases contemplated by the statute are such as do not ordinarily occur in the transaction of human affairs, as when a man has been convicted of murder, and it afterwards appears that the supposed deceased is still alive, or where one is convicted on the testimony of a witness who is subsequently found guilty of perjury in giving that testimony, or where there has been some providential cause, and cases of like character." *Harris* v. *Roan*, 119 *Ga.* 379 (46 S. E. 433).

In *Rawlins* v. *Mitchell*, 127 *Ga.* 24 (55 S. E. 958), it was said that a statement of Chief Justice Warner, that the only exception to the general rule prohibiting the granting of a second bill of exceptions in a case where the overruling of the motion for a new trial had been affirmed is in case of an extraordinary motion for new trial, was too broad; but the discussion by Chief Justice Warner of the nature of an extraordinary motion was not overruled. In *Rogers* v. *State*, 129 *Ga.* 589 (59 S. E. 288), the rule was again recognized, that, after the overruling of one motion for a new trial has been affirmed by this court, it is not error for the trial court to overrule an extraordinary motion for a new trial, where it does not appear that such an extraordinary state of facts is shown by the affidavits submitted upon the hearing of such a motion as would probably produce a different result if a new trial should be granted; and also that whether an extraordinary motion, based upon the ground of newly discovered testimony, should be granted or refused, rests largely in the sound discretion of the trial court.

Tested by these rules, there was no error in overruling the extraordinary motion for a new trial in the present case. Some of the newly discovered evidence was mere hearsay. When taken as a

whole, we can not say that the presiding judge abused his discretion in holding that the new evidence would not probably have produced a different result.

2. Objection was made by the defense to the introduction in evidence of counter-affidavits on behalf of the State, on the grounds, that there was no rule of law which authorized the reading of such evidence in reply to the showing made by the movant; that such affidavits had not been served on the movant or his attorneys; and that no affidavit was offered vouching for the character, veracity, or reputation of the affiants making such counter-affidavits. The first objection is answered by the decision in *Meeks* v. *State, 57 Ga.* 329, where it was declared: "Inasmuch as a new trial for newly discovered evidence should not be granted unless the new evidence would probably produce a different verdict, the judge, in the exercise of his discretion, may hear affidavits for and against the truth of the alleged new facts, and for and against the credibility of the witnesses by whom it is proposed to establish them, and thus go to the bottom of the showing, so as to discover, if possible, how much of true substance there is in the alleged new matter." This practice has been frequently recognized. *Coast Line R. Co.* v. *Boston, 83 Ga. 387* (9 S. E. 1108); *Jordan* v. *State, 120 Ga. 864* (48 S. E. 352). See also *Fouracre* v. *State, 4 Ga. App. 692* (62 S. E. 116). On principle as well as authority, where a defendant convicted of a crime makes an extraordinary motion for a new trial, and presents to the trial court evidence which he claims is not only newly discovered but of a character which would probably produce a different result on a new trial, we see no reason why the court should be required to exclude light on those subjects and be prevented from investigating whether the contention is meritorious or not.

Where one seeks to upset a verdict and obtain a new trial on the ground of newly discovered evidence of witnesses, the statute requires that he shall produce affidavits as to their residence, associates, means of knowledge, character, and credibility. Civil Code (1910), § 6086. But where, on behalf of the State, affidavits are produced to rebut or attack those thus produced by the movant, there is no requirement that the makers of rebutting affidavits must be thus sustained as a condition of admitting their affidavits. The burden is on the person who seeks to obtain the new trial to show that the newly discovered evidence would probably produce a dif-

ferent result, and for that purpose the new witnesses are required to be sustained by evidence of the character mentioned. But no such burden rests on the State in rebutting the contention of the movant.

There is no statutory provision that the rebutting affidavits of the State shall be served upon the movant or his counsel. The court may so regulate the hearing that no unfairness or injustice may be done. In the case at bar the presiding judge certified that he continued the hearing to enable the movant to meet the affidavits offered on behalf of the State, thus allowing time for that purpose.

Objection was also offered to another affidavit introduced on behalf of the State, because it contained hearsay evidence. The presiding judge certified that he sustained the objection as to all of such affidavit which appeared to be hearsay.

*Judgment affirmed. All the Justices concur.*